(Slip Opinion)               OCTOBER  TERM,  2010                    1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## KENTUCKY *v.* KING

CERTIORARI TO THE SUPREME COURT OF KENTUCKY

No. 09–1272.   Argued January 12, 2011—Decided May 16, 2011

Police officers in Lexington, Kentucky, followed a suspected drug dealer
to an apartment complex.  They smelled marijuana outside an
apartment door, knocked loudly, and announced their presence.  As
soon as the officers began knocking, they heard noises coming from
the apartment; the officers believed that these noises were consistent
with the destruction of evidence.  The officers announced their intent
to enter the apartment, kicked in the door, and found respondent and
others.  They saw drugs in plain view during a protective sweep of
the apartment and found additional evidence during a subsequent
search.  The Circuit Court denied respondent's motion to suppress
the evidence, holding that exigent circumstances—the need to pre-
vent destruction of evidence—justified the warrantless entry.  Re-
spondent entered a conditional guilty plea, reserving his right to ap-
peal the suppression ruling, and the Kentucky Court of Appeals
affirmed.  The Supreme Court of Kentucky reversed.  The court as-
sumed that exigent circumstances existed, but it nonetheless invali-
dated the search.  The exigent circumstances rule did not apply, the
court held, because the police should have foreseen that their conduct
would prompt the occupants to attempt to destroy evidence.

*Held*:
   1. The exigent circumstances rule applies when the police do not
create the exigency by engaging or threatening to engage in conduct
that violates the Fourth Amendment.  Pp. 5–16.
      (a) The Fourth Amendment expressly imposes two requirements:
All searches and seizures must be reasonable; and a warrant may not
be issued unless probable cause is properly established and the scope
of the authorized search is set out with particularity.  Although
" 'searches and seizures inside a home without a warrant are pre-
sumptively unreasonable,' " *Brigham City* v. *Stuart*, 547 U. S. 398,

403, this presumption may be overcome when " 'the exigencies of the situation' make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment," *Mincey* v. *Arizona*, 437 U. S. 385, 394. One such exigency is the need "to prevent the imminent destruction of evidence." *Brigham City*, *supra,* at 403. Pp. 5–6.

(b) Under the "police-created exigency" doctrine, which lower courts have developed as an exception to the exigent circumstances rule, exigent circumstances do not justify a warrantless search when the exigency was "created" or "manufactured" by the conduct of the police. The lower courts have not agreed, however, on the test for determining when police impermissibly create an exigency. Pp. 7–8.

(c) The proper test follows from the principle that permits warrantless searches: warrantless searches are allowed when the circumstances make it reasonable, within the meaning of the Fourth Amendment, to dispense with the warrant requirement. Thus, a warrantless entry based on exigent circumstances is reasonable when the police did not create the exigency by engaging or threatening to engage in conduct violating the Fourth Amendment. A similar approach has been taken in other cases involving warrantless searches. For example, officers may seize evidence in plain view if they have not violated the Fourth Amendment in arriving at the spot from which the observation of the evidence is made, see *Horton* v. *California*, 496 U. S. 128, 136–140; and they may seek consent-based encounters if they are lawfully present in the place where the consensual encounter occurs, see *INS* v. *Delgado*, 466 U. S. 210, 217, n. 5. Pp. 8–10.

(d) Some courts, including the Kentucky Supreme Court, have imposed additional requirements—asking whether officers " 'deliberately created the exigent circumstances with the bad faith intent to avoid the warrant requirement,' " 302 S. W. 3d 649, 656 (case below); reasoning that police may not rely on an exigency if " 'it was reasonably foreseeable that [their] investigative tactics . . . would create the exigent circumstances,' "*ibid.;* faulting officers for knocking on a door when they had sufficient evidence to seek a warrant but did not do so; and finding that officers created or manufactured an exigency when their investigation was contrary to standard or good law enforcement practices. Such requirements are unsound and are thus rejected. Pp. 10–14.

(e) Respondent contends that an exigency is impermissibly created when officers engage in conduct that would cause a reasonable person to believe that entry was imminent and inevitable, but that approach is also flawed. The ability of officers to respond to an exigency cannot turn on such subtleties as the officers' tone of voice in

announcing their presence and the forcefulness of their knocks. A forceful knock may be necessary to alert the occupants that someone is at the door, and unless officers identify themselves loudly enough, occupants may not know who is at their doorstep. Respondent's test would make it extremely difficult for officers to know how loudly they may announce their presence or how forcefully they may knock without running afoul of the police-created exigency rule. And in most cases, it would be nearly impossible for a court to determine whether that threshold had been passed. Pp. 14–15.

   2. Assuming that an exigency existed here, there is no evidence that the officers either violated the Fourth Amendment or threatened to do so prior to the point when they entered the apartment. Pp. 16–19.

      (a) Any question about whether an exigency existed here is better addressed by the Kentucky Supreme Court on remand. P. 17.

      (b) Assuming an exigency did exist, the officers' conduct—banging on the door and announcing their presence—was entirely consistent with the Fourth Amendment. Respondent has pointed to no evidence supporting his argument that the officers made any sort of "demand" to enter the apartment, much less a demand that amounts to a threat to violate the Fourth Amendment. If there is contradictory evidence that has not been brought to this Court's attention, the state court may elect to address that matter on remand. Finally, the record makes clear that the officers' announcement that they were going to enter the apartment was made after the exigency arose. Pp. 17–19.

302 S. W. 3d 649, reversed and remanded.

   ALITO, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, THOMAS, BREYER, SOTOMAYOR, and KAGAN, JJ., joined. GINSBURG, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 09–1272

## KENTUCKY, PETITIONER *v.* HOLLIS DESHAUN KING

### ON WRIT OF CERTIORARI TO THE SUPREME COURT OF KENTUCKY

[May 16, 2011]

JUSTICE ALITO delivered the opinion of the Court.

It is well established that "exigent circumstances," including the need to prevent the destruction of evidence, permit police officers to conduct an otherwise permissible search without first obtaining a warrant. In this case, we consider whether this rule applies when police, by knocking on the door of a residence and announcing their presence, cause the occupants to attempt to destroy evidence. The Kentucky Supreme Court held that the exigent circumstances rule does not apply in the case at hand because the police should have foreseen that their conduct would prompt the occupants to attempt to destroy evidence. We reject this interpretation of the exigent circumstances rule. The conduct of the police prior to their entry into the apartment was entirely lawful. They did not violate the Fourth Amendment or threaten to do so. In such a situation, the exigent circumstances rule applies.

## I

### A

This case concerns the search of an apartment in Lexington, Kentucky. Police officers set up a controlled buy of crack cocaine outside an apartment complex. Undercover

Officer Gibbons watched the deal take place from an un-marked car in a nearby parking lot. After the deal oc-curred, Gibbons radioed uniformed officers to move in on the suspect. He told the officers that the suspect was moving quickly toward the breezeway of an apartment building, and he urged them to "hurry up and get there" before the suspect entered an apartment. App. 20.

In response to the radio alert, the uniformed officers drove into the nearby parking lot, left their vehicles, and ran to the breezeway. Just as they entered the breezeway, they heard a door shut and detected a very strong odor of burnt marijuana. At the end of the breezeway, the officers saw two apartments, one on the left and one on the right, and they did not know which apartment the suspect had entered. Gibbons had radioed that the suspect was run-ning into the apartment on the right, but the officers did not hear this statement because they had already left their vehicles. Because they smelled marijuana smoke emanating from the apartment on the left, they ap-proached the door of that apartment.

Officer Steven Cobb, one of the uniformed officers who approached the door, testified that the officers banged on the left apartment door "as loud as [they] could" and an-nounced, "'This is the police'" or "'Police, police, police.'" *Id.,* at 22–23. Cobb said that "[a]s soon as [the officers] started banging on the door," they "could hear people inside moving," and "[i]t sounded as [though] things were being moved inside the apartment." *Id.,* at 24. These noises, Cobb testified, led the officers to believe that drug-related evidence was about to be destroyed.

At that point, the officers announced that they "were going to make entry inside the apartment." *Ibid.* Cobb then kicked in the door, the officers entered the apart-ment, and they found three people in the front room: respondent Hollis King, respondent's girlfriend, and a

guest who was smoking marijuana.[1]   The officers performed a protective sweep of the apartment during which they saw marijuana and powder cocaine in plain view. In a subsequent search, they also discovered crack cocaine, cash, and drug paraphernalia.

Police eventually entered the apartment on the right. Inside, they found the suspected drug dealer who was the initial target of their investigation.

## B

In the Fayette County Circuit Court, a grand jury charged respondent with trafficking in marijuana, first-degree trafficking in a controlled substance, and second-degree persistent felony offender status. Respondent filed a motion to suppress the evidence from the warrantless search, but the Circuit Court denied the motion. The Circuit Court concluded that the officers had probable cause to investigate the marijuana odor and that the officers "properly conducted [the investigation] by initially knocking on the door of the apartment unit and awaiting the response or consensual entry." App. to Pet. for Cert. 9a. Exigent circumstances justified the warrantless entry, the court held, because "there was no response at all to the knocking," and because "Officer Cobb heard movement in the apartment which he reasonably concluded were persons in the act of destroying evidence, particularly narcotics because of the smell." *Ibid.* Respondent then entered a conditional guilty plea, reserving his right to appeal the denial of his suppression motion. The court sentenced respondent to 11 years' imprisonment.

The Kentucky Court of Appeals affirmed. It held that

_____

[1] Respondent's girlfriend leased the apartment, but respondent stayed there part of the time, and his child lived there. Based on these facts, Kentucky conceded in state court that respondent has Fourth Amendment standing to challenge the search. See App. to Pet. for Cert. 7a; see also 302 S. W. 3d 649, 652 (Ky. 2010).

exigent circumstances justified the warrantless entry because the police reasonably believed that evidence would be destroyed. The police did not impermissibly create the exigency, the court explained, because they did not deliberately evade the warrant requirement.

The Supreme Court of Kentucky reversed. 302 S. W. 3d 649 (2010). As a preliminary matter, the court observed that there was "certainly some question as to whether the sound of persons moving [inside the apartment] was sufficient to establish that evidence was being destroyed." *Id.,* at 655. But the court did not answer that question. Instead, it "assume[d] for the purpose of argument that exigent circumstances existed." *Ibid.*

To determine whether police impermissibly created the exigency, the Supreme Court of Kentucky announced a two-part test. First, the court held, police cannot "deliberately creat[e] the exigent circumstances with the bad faith intent to avoid the warrant requirement." *Id.*, at 656 (internal quotation marks omitted). Second, even absent bad faith, the court concluded, police may not rely on exigent circumstances if "it was reasonably foreseeable that the investigative tactics employed by the police would create the exigent circumstances." *Ibid.* (internal quotation marks omitted). Although the court found no evidence of bad faith, it held that exigent circumstances could not justify the search because it was reasonably foreseeable that the occupants would destroy evidence when the police knocked on the door and announced their presence. *Ibid.*

We granted certiorari. 561 U. S. ___ (2010).[2]

_____

[2] After we granted certiorari, respondent filed a motion to dismiss the petition as improvidently granted, which we denied. 562 U. S. ___ (2010). Respondent's principal argument was that the case was moot because, after the Kentucky Supreme Court reversed his conviction, the Circuit Court dismissed the charges against him. Respondent's argument is foreclosed by *United States* v. *Villamonte-Marquez*, 462 U. S.

## II

### A

The Fourth Amendment provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The text of the Amendment thus expressly imposes two requirements. First, all searches and seizures must be reasonable. Second, a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity. See *Payton* v. *New York*, 445 U. S. 573, 584 (1980).

Although the text of the Fourth Amendment does not specify when a search warrant must be obtained, this Court has inferred that a warrant must generally be secured. "It is a 'basic principle of Fourth Amendment law,'" we have often said, "'that searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Brigham City* v. *Stuart*, 547 U. S. 398, 403 (2006) (quoting *Groh* v. *Ramirez*, 540 U. S. 551, 559 (2004)). But we have also recognized that this presumption may be overcome in some circumstances because "[t]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Brigham City*, *supra,* at 403; see also

––––––––

579, 581, n. 2 (1983). As we explained in *Villamonte-Marquez*, our reversal of the Kentucky Supreme Court's decision "would reinstate the judgment of conviction and the sentence entered" by the Circuit Court. *Ibid.* The absence of an indictment does not change matters. See *ibid.* ("Upon respondents' conviction and sentence, the indictment that was returned against them was merged into their convictions and sentences").

*Michigan* v. *Fisher*, 558 U. S. ___, ___ (2009) *(per curiam)* (slip op., at 2). Accordingly, the warrant requirement is subject to certain reasonable exceptions. *Brigham City*, *supra*, at 403.

One well-recognized exception applies when "'the exigencies of the situation' make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment." *Mincey* v. *Arizona*, 437 U. S. 385, 394 (1978); see also *Payton*, *supra,* at 590 ("[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant").

This Court has identified several exigencies that may justify a warrantless search of a home. See *Brigham City*, 547 U. S., at 403. Under the "emergency aid" exception, for example, "officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Ibid.;* see also, *e.g., Fisher*, *supra,* at ___ (slip op., at 5) (upholding warrantless home entry based on emergency aid exception). Police officers may enter premises without a warrant when they are in hot pursuit of a fleeing suspect. See *United States* v. *Santana*, 427 U. S. 38, 42–43 (1976). And—what is relevant here—the need "to prevent the imminent destruction of evidence" has long been recognized as a sufficient justification for a warrantless search. *Brigham City*, *supra,* at 403; see also *Georgia* v. *Randolph*, 547 U. S. 103, 116, n. 6 (2006); *Minnesota* v. *Olson*, 495 U. S. 91, 100 (1990).[3]

—————

[3] Preventing the destruction of evidence may also justify dispensing with Fourth Amendment requirements in other contexts. See, *e.g., Richards* v. *Wisconsin*, 520 U. S. 385, 395–396 (1997) (failure to comply with the knock-and-announce requirement was justified because "the circumstances . . . show[ed] that the officers had a reasonable suspicion that [a suspect] might destroy evidence if given further opportunity to

B

Over the years, lower courts have developed an exception to the exigent circumstances rule, the so-called "police-created exigency" doctrine. Under this doctrine, police may not rely on the need to prevent destruction of evidence when that exigency was "created" or "manufactured" by the conduct of the police. See, *e.g., United States* v. *Chambers*, 395 F. 3d 563, 566 (CA6 2005) ("[F]or a warrantless search to stand, law enforcement officers must be responding to an unanticipated exigency rather than simply creating the exigency for themselves"); *United States* v. *Gould*, 364 F. 3d 578, 590 (CA5 2004) (en banc) ("[A]lthough exigent circumstances may justify a warrantless probable cause entry into the home, they will not do so if the exigent circumstances were manufactured by the agents" (internal quotation marks omitted)).

In applying this exception for the "creation" or "manufacturing" of an exigency by the police, courts require something more than mere proof that fear of detection by the police caused the destruction of evidence. An additional showing is obviously needed because, as the Eighth Circuit has recognized, "in some sense the police always create the exigent circumstances." *United States* v. *Duchi*, 906 F. 2d 1278, 1284 (CA8 1990). That is to say, in the vast majority of cases in which evidence is destroyed by persons who are engaged in illegal conduct, the reason for the destruction is fear that the evidence will fall into the hands of law enforcement. Destruction of evidence issues probably occur most frequently in drug cases because drugs may be easily destroyed by flushing them down a

─────────

do so"); *Schmerber* v. *California*, 384 U. S. 757, 770–771 (1966) (warrantless testing for blood-alcohol content was justified based on potential destruction of evidence); cf. *United States* v. *Banks*, 540 U. S. 31, 37–40 (2003) (15 to 20 seconds was a reasonable time for officers to wait after knocking and announcing their presence where there was a risk that suspect would dispose of cocaine).

toilet or rinsing them down a drain. Persons in possession of valuable drugs are unlikely to destroy them unless they fear discovery by the police. Consequently, a rule that precludes the police from making a warrantless entry to prevent the destruction of evidence whenever their conduct causes the exigency would unreasonably shrink the reach of this well-established exception to the warrant requirement.

Presumably for the purpose of avoiding such a result, the lower courts have held that the police-created exigency doctrine requires more than simple causation, but the lower courts have not agreed on the test to be applied. Indeed, the petition in this case maintains that "[t]here are currently five different tests being used by the United States Courts of Appeals," Pet. for Cert. 11, and that some state courts have crafted additional tests, *id.*, at 19–20.

## III
## A

Despite the welter of tests devised by the lower courts, the answer to the question presented in this case follows directly and clearly from the principle that permits warrantless searches in the first place. As previously noted, warrantless searches are allowed when the circumstances make it reasonable, within the meaning of the Fourth Amendment, to dispense with the warrant requirement. Therefore, the answer to the question before us is that the exigent circumstances rule justifies a warrantless search when the conduct of the police preceding the exigency is reasonable in the same sense. Where, as here, the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment, warrantless entry to prevent the destruction of evidence is reasonable and thus allowed.[4]

---

[4] There is a strong argument to be made that, at least in most circum-

We have taken a similar approach in other cases involving warrantless searches. For example, we have held that law enforcement officers may seize evidence in plain view, provided that they have not violated the Fourth Amendment in arriving at the spot from which the observation of the evidence is made. See *Horton* v. *California*, 496 U. S. 128, 136–140 (1990). As we put it in *Horton*, "[i]t is . . . an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Id.,* at 136. So long as this prerequisite is satisfied, however, it does not matter that the officer who makes the observation may have gone to the spot from which the evidence was seen with the hope of being able to view and seize the evidence. See *id.,* at 138 ("The fact that an officer is interested in an item of evidence and fully expects to find it in the course of a search should not invalidate its seizure"). Instead, the Fourth Amendment requires only that the steps preceding the seizure be lawful. See *id.,* at 136–137.

Similarly, officers may seek consent-based encounters if they are lawfully present in the place where the consensual encounter occurs. See *INS* v. *Delgado*, 466 U. S. 210, 217, n. 5 (1984) (noting that officers who entered into consent-based encounters with employees in a factory building were "lawfully present [in the factory] pursuant to consent or a warrant"). If consent is freely given, it makes no difference that an officer may have approached the person with the hope or expectation of obtaining consent. See *id.,* at 216 ("While most citizens will respond to a police request, the fact that people do so, and do so

---

stances, the exigent circumstances rule should not apply where the police, without a warrant or any legally sound basis for a warrantless entry, threaten that they will enter without permission unless admitted. In this case, however, no such actual threat was made, and therefore we have no need to reach that question.

without being told they are free not to respond, hardly eliminates the consensual nature of the response").

## B

Some lower courts have adopted a rule that is similar to the one that we recognize today. See *United States* v. *MacDonald*, 916 F. 2d 766, 772 (CA2 1990) (en banc) (law enforcement officers "do not impermissibly create exigent circumstances" when they "act in an entirely lawful manner"); *State* v. *Robinson*, 2010 WI 80, ¶32, 327 Wis. 2d 302, 326–328, 786 N. W. 2d 463, 475–476 (2010). But others, including the Kentucky Supreme Court, have imposed additional requirements that are unsound and that we now reject.

*Bad faith.* Some courts, including the Kentucky Supreme Court, ask whether law enforcement officers "'deliberately created the exigent circumstances with the bad faith intent to avoid the warrant requirement.'" 302 S. W. 3d, at 656 (quoting *Gould*, 364 F. 3d, at 590); see also, *e.g., Chambers*, 395 F. 3d, at 566; *United States* v. *Socey*, 846 F. 2d 1439, 1448 (CADC 1988); *United States* v. *Rengifo*, 858 F. 2d 800, 804 (CA1 1988).

This approach is fundamentally inconsistent with our Fourth Amendment jurisprudence. "Our cases have repeatedly rejected" a subjective approach, asking only whether "the circumstances, viewed *objectively*, justify the action." *Brigham City*, 547 U. S., at 404 (alteration and internal quotation marks omitted); see also *Fisher*, 558 U. S., at ___ (slip op., at 3–5). Indeed, we have never held, outside limited contexts such as an "inventory search or administrative inspection . . . , that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment." *Whren* v. *United States*, 517 U. S. 806, 812 (1996); see also *Brigham City, supra,* at 405.

The reasons for looking to objective factors, rather than subjective intent, are clear. Legal tests based on reason-

ableness are generally objective, and this Court has long taken the view that "evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer." *Horton, supra,* at 138.

*Reasonable foreseeability.* Some courts, again including the Kentucky Supreme Court, hold that police may not rely on an exigency if "'it was reasonably foreseeable that the investigative tactics employed by the police would create the exigent circumstances.'" 302 S. W. 3d, at 656 (quoting *Mann* v. *State*, 357 Ark. 159, 172, 161 S. W. 3d 826, 834 (2004)); see also, *e.g., United States* v. *Mowatt*, 513 F. 3d 395, 402 (CA4 2008). Courts applying this test have invalidated warrantless home searches on the ground that it was reasonably foreseeable that police officers, by knocking on the door and announcing their presence, would lead a drug suspect to destroy evidence. See, *e.g., id.*, at 402–403; 302 S. W. 3d, at 656.

Contrary to this reasoning, however, we have rejected the notion that police may seize evidence without a warrant only when they come across the evidence by happenstance. In *Horton*, as noted, we held that the police may seize evidence in plain view even though the officers may be "interested in an item of evidence and fully expec[t] to find it in the course of a search." 496 U. S., at 138.

Adoption of a reasonable foreseeability test would also introduce an unacceptable degree of unpredictability. For example, whenever law enforcement officers knock on the door of premises occupied by a person who may be involved in the drug trade, there is *some* possibility that the occupants may possess drugs and may seek to destroy them. Under a reasonable foreseeability test, it would be necessary to quantify the degree of predictability that must be reached before the police-created exigency doctrine comes into play.

A simple example illustrates the difficulties that such

an approach would produce. Suppose that the officers in the present case did not smell marijuana smoke and thus knew only that there was a 50% chance that the fleeing suspect had entered the apartment on the left rather than the apartment on the right. Under those circumstances, would it have been reasonably foreseeable that the occupants of the apartment on the left would seek to destroy evidence upon learning that the police were at the door? Or suppose that the officers knew only that the suspect had disappeared into one of the apartments on a floor with 3, 5, 10, or even 20 units? If the police chose a door at random and knocked for the purpose of asking the occupants if they knew a person who fit the description of the suspect, would it have been reasonably foreseeable that the occupants would seek to destroy evidence?

We have noted that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Graham* v. *Connor*, 490 U. S. 386, 396–397 (1989). The reasonable foreseeability test would create unacceptable and unwarranted difficulties for law enforcement officers who must make quick decisions in the field, as well as for judges who would be required to determine after the fact whether the destruction of evidence in response to a knock on the door was reasonably foreseeable based on what the officers knew at the time.

*Probable cause and time to secure a warrant.* Some courts, in applying the police-created exigency doctrine, fault law enforcement officers if, after acquiring evidence that is sufficient to establish probable cause to search particular premises, the officers do not seek a warrant but instead knock on the door and seek either to speak with an occupant or to obtain consent to search. See, *e.g., Chambers*, *supra,* at 569 (citing "[t]he failure to seek a warrant in the face of plentiful probable cause" as a factor indicat-

ing that the police deliberately created the exigency).

This approach unjustifiably interferes with legitimate law enforcement strategies. There are many entirely proper reasons why police may not want to seek a search warrant as soon as the bare minimum of evidence needed to establish probable cause is acquired. Without attempting to provide a comprehensive list of these reasons, we note a few.

First, the police may wish to speak with the occupants of a dwelling before deciding whether it is worthwhile to seek authorization for a search. They may think that a short and simple conversation may obviate the need to apply for and execute a warrant. See *Schneckloth* v. *Bustamonte*, 412 U. S. 218, 228 (1973). Second, the police may want to ask an occupant of the premises for consent to search because doing so is simpler, faster, and less burdensome than applying for a warrant. A consensual search also "may result in considerably less inconvenience" and embarrassment to the occupants than a search conducted pursuant to a warrant. *Ibid.* Third, law enforcement officers may wish to obtain more evidence before submitting what might otherwise be considered a marginal warrant application. Fourth, prosecutors may wish to wait until they acquire evidence that can justify a search that is broader in scope than the search that a judicial officer is likely to authorize based on the evidence then available. And finally, in many cases, law enforcement may not want to execute a search that will disclose the existence of an investigation because doing so may interfere with the acquisition of additional evidence against those already under suspicion or evidence about additional but as yet unknown participants in a criminal scheme.

We have said that "[l]aw enforcement officers are under no constitutional duty to call a halt to criminal investigation the moment they have the minimum evidence to establish probable cause." *Hoffa* v. *United States*, 385

U. S. 293, 310 (1966).  Faulting the police for failing to apply for a search warrant at the earliest possible time after obtaining probable cause imposes a duty that is nowhere to be found in the Constitution.

*Standard or good investigative tactics.*  Finally, some lower court cases suggest that law enforcement officers may be found to have created or manufactured an exigency if the court concludes that the course of their investigation was "contrary to standard or good law enforcement practices (or to the policies or practices of their jurisdictions)."  *Gould*, 364 F. 3d, at 591.  This approach fails to provide clear guidance for law enforcement officers and authorizes courts to make judgments on matters that are the province of those who are responsible for federal and state law enforcement agencies.

C

Respondent argues for a rule that differs from those discussed above, but his rule is also flawed.  Respondent contends that law enforcement officers impermissibly create an exigency when they "engage in conduct that would cause a reasonable person to believe that entry is imminent and inevitable."  Brief for Respondent 24.  In respondent's view, relevant factors include the officers' tone of voice in announcing their presence and the forcefulness of their knocks.  But the ability of law enforcement officers to respond to an exigency cannot turn on such subtleties.

Police officers may have a very good reason to announce their presence loudly and to knock on the door with some force.  A forceful knock may be necessary to alert the occupants that someone is at the door. Cf. *United States* v. *Banks*, 540 U. S. 31, 33 (2003) (Police "rapped hard enough on the door to be heard by officers at the back door" and announced their presence, but defendant "was in the shower and testified that he heard nothing").  Fur-

thermore, unless police officers identify themselves loudly enough, occupants may not know who is at their doorstep. Officers are permitted—indeed, encouraged—to identify themselves to citizens, and "in many circumstances this is cause for assurance, not discomfort." *United States* v. *Drayton*, 536 U. S. 194, 204 (2002). Citizens who are startled by an unexpected knock on the door or by the sight of unknown persons in plain clothes on their doorstep may be relieved to learn that these persons are police officers. Others may appreciate the opportunity to make an informed decision about whether to answer the door to the police.

If respondent's test were adopted, it would be extremely difficult for police officers to know how loudly they may announce their presence or how forcefully they may knock on a door without running afoul of the police-created exigency rule. And in most cases, it would be nearly impossible for a court to determine whether that threshold had been passed. The Fourth Amendment does not require the nebulous and impractical test that respondent proposes.[5]

—————————

[5] Contrary to respondent's argument, see Brief for Respondent 13–18, *Johnson* v. *United States*, 333 U. S. 10 (1948), does not require affirmance in this case. In *Johnson*, officers noticed the smell of burning opium emanating from a hotel room. They then knocked on the door and demanded entry. Upon seeing that Johnson was the only occupant of the room, they placed her under arrest, searched the room, and discovered opium and drug paraphernalia. *Id.*, at 11.

Defending the legality of the search, the Government attempted to justify the warrantless search of the room as a valid search incident to a lawful arrest. See Brief for United States in *Johnson* v. *United States*, O. T. 1947, No. 329, pp. 13, 16, 36. The Government did not contend that the officers entered the room in order to prevent the destruction of evidence. Although the officers said that they heard a "'shuffling'" noise inside the room after they knocked on the door, 333 U. S., at 12, the Government did not claim that this particular noise was a noise that would have led a reasonable officer to think that evidence was about to be destroyed. Thus, *Johnson* is simply not a case about

## D

For these reasons, we conclude that the exigent circumstances rule applies when the police do not gain entry to premises by means of an actual or threatened violation of the Fourth Amendment. This holding provides ample protection for the privacy rights that the Amendment protects.

When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do. And whether the person who knocks on the door and requests the opportunity to speak is a police officer or a private citizen, the occupant has no obligation to open the door or to speak. Cf. *Florida* v. *Royer*, 460 U. S. 491, 497–498 (1983). ("[H]e may decline to listen to the questions at all and may go on his way"). When the police knock on a door but the occupants choose not to respond or to speak, "the investigation will have reached a conspicuously low point," and the occupants "will have the kind of warning that even the most elaborate security system cannot provide." *Chambers*, 395 F. 3d, at 577 (Sutton, J., dissenting). And even if an occupant chooses to open the door and speak with the officers, the occupant need not allow the officers to enter the premises and may refuse to answer any questions at any time.

Occupants who choose not to stand on their constitutional rights but instead elect to attempt to destroy evidence have only themselves to blame for the warrantless exigent-circumstances search that may ensue.

---

exigent circumstances. See *id.*, at 14–15 (noting that if "exceptional circumstances" existed—for example, if a "suspect was fleeing or likely to take flight" or if "evidence or contraband was threatened with removal or destruction"—then "it may be contended that a magistrate's warrant for search may be dispensed with").

IV

We now apply our interpretation of the police-created exigency doctrine to the facts of this case.

A

We need not decide whether exigent circumstances existed in this case. Any warrantless entry based on exigent circumstances must, of course, be supported by a genuine exigency. See *Brigham City*, 547 U. S., at 406. The trial court and the Kentucky Court of Appeals found that there was a real exigency in this case, but the Kentucky Supreme Court expressed doubt on this issue, observing that there was "certainly some question as to whether the sound of persons moving [inside the apartment] was sufficient to establish that evidence was being destroyed." 302 S. W. 3d, at 655. The Kentucky Supreme Court "assum[ed] for the purpose of argument that exigent circumstances existed," *ibid.,* and it held that the police had impermissibly manufactured the exigency.

We, too, assume for purposes of argument that an exigency existed. We decide only the question on which the Kentucky Supreme Court ruled and on which we granted certiorari: Under what circumstances do police impermissibly create an exigency? Any question about whether an exigency actually existed is better addressed by the Kentucky Supreme Court on remand. See *Kirk* v. *Louisiana*, 536 U. S. 635, 638 (2002) *(per curiam)* (reversing state-court judgment that exigent circumstances were not required for warrantless home entry and remanding for state court to determine whether exigent circumstances were present).

B

In this case, we see no evidence that the officers either violated the Fourth Amendment or threatened to do so prior to the point when they entered the apartment.

Officer Cobb testified without contradiction that the officers "banged on the door as loud as [they] could" and announced either "'Police, police, police'" or "'This is the police.'" App. 22–23. This conduct was entirely consistent with the Fourth Amendment, and we are aware of no other evidence that might show that the officers either violated the Fourth Amendment or threatened to do so (for example, by announcing that they would break down the door if the occupants did not open the door voluntarily).

Respondent argues that the officers "demanded" entry to the apartment, but he has not pointed to any evidence in the record that supports this assertion. He relies on a passing statement made by the trial court in its opinion denying respondent's motion to suppress. See App. to Pet. for Cert. 3a–4a. In recounting the events that preceded the search, the judge wrote that the officers "banged on the door of the apartment on the back left of the breezeway identifying themselves as police officers and *demanding* that the door be opened by the persons inside." *Ibid.* (emphasis added and deleted). However, at a later point in this opinion, the judge stated that the officers "initially knock[ed] on the door of the apartment unit and await[ed] the response or consensual entry." *Id.*, at 9a. This later statement is consistent with the testimony at the suppression hearing and with the findings of the state appellate courts. See 302 S. W. 3d, at 651 (The officers "knocked loudly on the back left apartment door and announced 'police'"); App. to Pet. for Cert. 14a (The officers "knock[ed] on the door and announc[ed] themselves as police"); App. 22–24. There is no evidence of a "demand" of any sort, much less a demand that amounts to a threat to violate the Fourth Amendment. If there is contradictory evidence that has not been brought to our attention, the state court may elect to address that matter on remand.

Finally, respondent claims that the officers "explained to [the occupants that the officers] were going to make entry

inside the apartment," *id.,* at 24, but the record is clear that the officers did not make this statement until after the exigency arose. As Officer Cobb testified, the officers "knew that there was possibly something that was going to be destroyed inside the apartment," and "*[a]t that point*, . . . [they] explained . . . [that they] were going to make entry." *Ibid.* (emphasis added). Given that this announcement was made *after* the exigency arose, it could not have created the exigency.

\*  \*  \*

Like the court below, we assume for purposes of argument that an exigency existed. Because the officers in this case did not violate or threaten to violate the Fourth Amendment prior to the exigency, we hold that the exigency justified the warrantless search of the apartment.

The judgment of the Kentucky Supreme Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 09–1272

_____

## KENTUCKY, PETITIONER *v.* HOLLIS DESHAUN KING

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF
KENTUCKY

[May 16, 2011]

JUSTICE GINSBURG, dissenting.

The Court today arms the police with a way routinely to dishonor the Fourth Amendment's warrant requirement in drug cases. In lieu of presenting their evidence to a neutral magistrate, police officers may now knock, listen, then break the door down, nevermind that they had ample time to obtain a warrant. I dissent from the Court's reduction of the Fourth Amendment's force.

The Fourth Amendment guarantees to the people "[t]he right . . . to be secure in their . . . houses . . . against unreasonable searches and seizures." Warrants to search, the Amendment further instructs, shall issue only upon a showing of "probable cause" to believe criminal activity is afoot. These complementary provisions are designed to ensure that police will seek the authorization of a neutral magistrate before undertaking a search or seizure. Exceptions to the warrant requirement, this Court has explained, must be "few in number and carefully delineated," if the main rule is to remain hardy. *United States* v. *United States Dist. Court for Eastern Dist. of Mich.*, 407 U. S. 297, 318 (1972); see *Kyllo* v. *United States*, 533 U. S. 27, 31 (2001).

This case involves a principal exception to the warrant requirement, the exception applicable in "exigent circumstances." See *ante*, at 6–7. "[C]arefully delineated," the exception should govern only in genuine emergency situa-

tions. Circumstances qualify as "exigent" when there is an imminent risk of death or serious injury, or danger that evidence will be immediately destroyed, or that a suspect will escape. *Brigham City* v. *Stuart*, 547 U. S. 398, 403 (2006). The question presented: May police, who could pause to gain the approval of a neutral magistrate, dispense with the need to get a warrant by themselves creating exigent circumstances? I would answer no, as did the Kentucky Supreme Court. The urgency must exist, I would rule, when the police come on the scene, not subsequent to their arrival, prompted by their own conduct.

I

Two pillars of our Fourth Amendment jurisprudence should have controlled the Court's ruling: First, "whenever practical, [the police must] obtain advance judicial approval of searches and seizures through the warrant procedure," *Terry* v. *Ohio*, 392 U. S. 1, 20 (1968); second, unwarranted "searches and seizures inside a home" bear heightened scrutiny, *Payton* v. *New York*, 445 U. S. 573, 586 (1980). The warrant requirement, Justice Jackson observed, ranks among the "fundamental distinctions between our form of government, where officers are under the law, and the police-state where they are the law." *Johnson* v. *United States*, 333 U. S. 10, 17 (1948). The Court has accordingly declared warrantless searches, in the main, "*per se* unreasonable." *Mincey* v. *Arizona*, 437 U. S. 385, 390 (1978); see also *Groh* v. *Ramirez*, 540 U. S. 551, 559 (2004). "[T]he police bear a heavy burden," the Court has cautioned, "when attempting to demonstrate an urgent need that might justify warrantless searches." *Welsh* v. *Wisconsin*, 466 U. S. 740, 749–750 (1984).

That heavy burden has not been carried here. There was little risk that drug-related evidence would have been destroyed had the police delayed the search pending a magistrate's authorization. As the Court recognizes,

"[p]ersons in possession of valuable drugs are unlikely to destroy them unless they fear discovery by the police." *Ante*, at 8. Nothing in the record shows that, prior to the knock at the apartment door, the occupants were apprehensive about police proximity.

In no quarter does the Fourth Amendment apply with greater force than in our homes, our most private space which, for centuries, has been regarded as "'entitled to special protection.'" *Georgia* v. *Randolph*, 547 U. S. 103, 115, and n. 4 (2006); *Minnesota* v. *Carter*, 525 U. S. 83, 99 (1998) (KENNEDY, J., concurring). Home intrusions, the Court has said, are indeed "the chief evil against which . . . the Fourth Amendment is directed." *Payton*, 445 U. S., at 585 (internal quotation marks omitted); see *Silverman* v. *United States*, 365 U. S. 505, 511 (1961) ("At [the Fourth Amendment's] very core stands the right of a man to retreat to his own home and there be free from unreasonable governmental intrusion."). "'[S]earches and seizures inside a home without a warrant are [therefore] presumptively unreasonable.'" *Brigham City*, 547 U. S., at 403 (quoting *Groh*, 540 U. S., at 559). How "secure" do our homes remain if police, armed with no warrant, can pound on doors at will and, on hearing sounds indicative of things moving, forcibly enter and search for evidence of unlawful activity?

## II

As above noted, to justify the police activity in this case, Kentucky invoked the once-guarded exception for emergencies "in which the delay necessary to obtain a warrant . . . threaten[s] 'the destruction of evidence.'" *Schmerber* v. *California*, 384 U. S. 757, 770 (1966) (quoting *Preston* v. *United States*, 376 U. S. 364, 367 (1964)). To fit within this exception, "police action literally must be [taken] 'now or never' to preserve the evidence of the crime." *Roaden* v. *Kentucky*, 413 U. S. 496, 505 (1973).

The existence of a genuine emergency depends not only on the state of necessity at the time of the warrantless search; it depends, first and foremost, on "actions taken by the police *preceding* the warrantless search." *United States* v. *Coles*, 437 F. 3d 361, 367 (CA3 2006). See also *United States* v. *Chambers*, 395 F. 3d 563, 565 (CA6 2005) ("[O]fficers must seek a warrant based on probable cause when they believe in advance they will find contraband or evidence of a crime."). "[W]asting a clear opportunity to obtain a warrant," therefore, "disentitles the officer from relying on subsequent exigent circumstances." S. Saltzburg & D. Capra, American Criminal Procedure 376 (8th ed. 2007).

Under an appropriately reined-in "emergency" or "exigent circumstances" exception, the result in this case should not be in doubt. The target of the investigation's entry into the building, and the smell of marijuana seeping under the apartment door into the hallway, the Kentucky Supreme Court rightly determined, gave the police "probable cause . . . sufficient . . . to obtain a warrant to search the . . . apartment." 302 S. W. 3d 649, 653 (2010). As that court observed, nothing made it impracticable for the police to post officers on the premises while proceeding to obtain a warrant authorizing their entry. *Id.*, at 654. Before this Court, Kentucky does not urge otherwise. See Brief for Petitioner 35, n. 13 (asserting "[i]t should be of no importance whether police could have obtained a warrant").

In *Johnson*, the Court confronted this scenario: standing outside a hotel room, the police smelled burning opium and heard "some shuffling or noise" coming from the room. 333 U. S., at 12 (internal quotation marks omitted). Could the police enter the room without a warrant? The Court answered no. Explaining why, the Court said:

"The right of officers to thrust themselves into a home

is . . . a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not a policeman . . . .

.          .          .          .          .

"If the officers in this case were excused from the constitutional duty of presenting their evidence to a magistrate, it is difficult to think of [any] case in which [a warrant] should be required." *Id.*, at 14–15.

I agree, and would not allow an expedient knock to override the warrant requirement.* Instead, I would accord that core requirement of the Fourth Amendment full respect. When possible, "a warrant must generally be secured," the Court acknowledges. *Ante,* at 5. There is every reason to conclude that securing a warrant was entirely feasible in this case, and no reason to contract the Fourth Amendment's dominion.

―――――――――

*The Court in *Johnson* was informed that "when [the officer] knocked on [Johnson's] door the 'first thing that naturally struck [her]' was to conceal the opium and the equipment for smoking it." See Brief for United States in *Johnson* v. *United States*, O. T. 1947, No. 329, p. 17, n. 6. Had the Government in *Johnson* urged that the "shuffling or noise" indicated evidence was at risk, would the result have changed? Justice Jackson's recognition of the primacy of the warrant requirement suggests not. But see *ante*, at 15, n. 5 (distinguishing *Johnson* on the ground that the Government did not contend "that the officers entered the room in order to prevent the destruction of evidence").