[Cite as *State v. Hancock*, 2012-Ohio-1436.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24654 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2010-CR-3877 |
| v. | : | |
| | : | |
| ZERRICK E. HANCOCK | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 30th day of March, 2012.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by JOHNNA M. SHIA, Atty. Reg. #0067685, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

MARK A. DETERS, Atty. Reg. #0085094, 371 West First Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1}  Zerrick E. Hancock appeals from his conviction and sentence following a no-contest plea to one count of crack-cocaine possession, a third-degree felony.

{¶ 2}  In his sole assignment of error, Hancock contends the trial court erred in overruling his motion to suppress evidence.

{¶ 3}   The facts underlying the present appeal are set forth in the trial court's suppression ruling as follows:

City of Dayton Police Officer Patrick Bell ("Bell") testified that he and other officers decided to conduct a "knock and advise" at 3 Firwood Dr. based on [a] complaint from the owner of the building. According to Bell, the owner had informed the police that the renter of the apartment had been evicted but that others whom the renter had allowed to live with him remained. Bell testified that the owner believed that there were drugs in the apartment.

Bell further testified that as he and others approached the residence to conduct the knock and advise, Defendant Zerrick Hancock ("Defendant") exited the front door. According to Bell, when Defendant saw the officers, who were approximately 15-20 feet from the front door, he turned around and went back into 3 Firwood Dr. Bell testified that he saw Defendant reach into his pocket and pull out a baggy with a white substance that Bell believed to be crack cocaine. Bell further testified that he told the other officers that the Defendant had crack cocaine and the officers followed Defendant into 3 Firwood Dr. According to Bell, he followed Defendant to the bathroom and when Bell entered the bathroom, he saw the plastic baggy with the white substance floating in the water.

Detective Ryan Halburnt ("Halburnt") then testified that he was the first officer to enter 3 Firwood Dr. following Defendant. He testified that he entered the residence because he believed that Defendant may try to hide or destroy the

crack cocaine that Bell had seen.

Halburnt also testified that he read Defendant his *Miranda* rights off the card provided by the police department. According to Halburnt, Defendant acknowledged that he understood each right and voluntarily waived those rights. Halburnt testified that no threats or promises were made Defendant in exchange for his waiver of rights, and that Defendant was coherent while being interviewed.

(Doc. # 14 at 1-2).

{¶ 4} Based on the crack cocaine retrieved from the bathroom and incriminating statements Hancock made to police, he was indicted on charges of possessing crack cocaine and evidence tampering. Hancock moved to suppress the crack cocaine and his incriminating statements, arguing that the officers' warrantless entry into the home was unlawful. The trial court disagreed. It reasoned that the officers were permitted to follow Hancock into the home based on their observation of apparent crack cocaine in his possession and their fear that he would destroy that evidence inside the home. The trial court also found that Hancock validly had waived his *Miranda* rights before making incriminating statements.

{¶ 5} Following the trial court's ruling, Hancock pled no-contest to the possession charge in exchange for dismissal of the tampering charge. The trial court imposed a three-year prison sentence. This appeal followed.

{¶ 6} "Under the standard of review for a motion to suppress, an appellate court must accept as true the trial court's supported findings of fact and then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable

legal standard." *State v. Leveck*, 2d Dist. Montgomery No. 23970, 2011-Ohio-1135, ¶8, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8.

**{¶ 7}** In the present case, Hancock does not challenge the trial court's factual findings, which are based on the officers' suppression hearing testimony. The issue is whether those facts reveal a Fourth Amendment violation. Hancock contends a Fourth Amendment violation exists for two reasons: (1) he was unlawfully "seized" before police saw him pull crack cocaine out of his pocket and (2) no "exigent circumstances" justified a warrantless entry into the home because the officers themselves created the exigency by announcing their presence. Both arguments lack merit.

**{¶ 8}** The record reflects that several police officers arrived at the home after dark in an unmarked van. They then approached on foot wearing police vests and encountered Hancock as he was exiting the front door. Detective Halburnt immediately asked Hancock whether the officers could talk to him for a minute. Hancock contends he was seized at that point. Based on the officers' show of force, he argues that no reasonable person would have felt free to ignore Halburnt's request. Hancock further contends the seizure was unlawful because he had not yet removed the crack cocaine from his pocket.

**{¶ 9}** Upon review, we are unpersuaded that Hancock was "seized" when detective Halburnt asked whether the officers could talk to him. "A show of force by a law enforcement officer is a necessary predicate to a seizure for purpose of the Fourth Amendment. * * * However, until an officer's attempt to affect an investigatory stop succeeds by obtaining the suspect's compliance, no seizure takes place and, therefore, no Fourth Amendment review of the reasonableness of the officer's decision to intrude on the suspect's privacy is warranted."

*State v. Hart*, 2d Dist. Montgomery No. 22018, 2007-Ohio-7162, ¶7 (citations omitted). Because Hancock responded to detective Halburnt's inquiry by fleeing back into the home, there was no "seizure" outside the home regardless of the officers' show of force. *Id.* at ¶8.

{¶ 10} We are equally unpersuaded by Hancock's claim that the officers impermissibly created the exigency that caused them to follow him into the home. His argument is foreclosed by *Kentucky v. King*, __ U.S. __, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011). In *King*, the U.S. Supreme Court recognized that, strictly speaking, police almost always create the exigency that arises when detection of their presence results in the possibility of evidence being destroyed:

> That is to say, in the vast majority of cases in which evidence is destroyed by persons who are engaged in illegal conduct, the reason for the destruction is fear that the evidence will fall into the hands of law enforcement. Destruction of evidence issues probably occur most frequently in drug cases because drugs may be easily destroyed by flushing them down a toilet or rinsing them down a drain. Persons in possession of valuable drugs are unlikely to destroy them unless they fear discovery by the police. Consequently, a rule that precludes the police from making a warrantless entry to prevent the destruction of evidence whenever their conduct causes the exigency would unreasonably shrink the reach of this well-established exception to the warrant requirement.

*Id.* at 1857.

{¶ 11} As a result, the *King* majority held that when "police did not create the

exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment, warrantless entry to prevent the destruction of evidence is reasonable and thus allowed." *Id.* at 1858.

{¶ 12}   The police officers here neither violated nor threatened to violate the Fourth Amendment when they approached Hancock's door. "When law enforcement officers who are not armed with a warrant [attempt to] knock on a door, they do no more than any private citizen might do. And whether the person who knocks on the door and requests the opportunity to speak is a police officer or a private citizen, the occupant has no obligation to * * * speak." *Id.* at 1862. "Occupants who choose not to stand on their constitutional rights but instead elect to attempt to destroy evidence have only themselves to blame for the warrantless exigent-circumstances search that may ensue." *Id.*

{¶ 13}   On the authority of *King*, we reject Hancock's argument that exigent circumstances did not justify a warrantless entry into the home because police created the exigency.

{¶ 14}   The assignment of error is overruled, and the judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . .

GRADY, P.J., and DONOVAN, J., concur.

Copies mailed to:

Mathias H. Heck
Johnna M. Shia
Mark A. Deters
Hon. Barbara P. Gorman