**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 11-2979

———————

UNITED STATES OF AMERICA

v.

JOSE M. ORTIZ,
            Appellant

———————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court  No. 1-10-cr-00131-001
District Judge: The Honorable Christopher C. Conner

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 17, 2012

Before: SMITH and FISHER, *Circuit Judges*
and STEARNS, *District Judge*[*]

(Filed: May 24, 2012)

———————

OPINION

———————

SMITH, *Circuit Judge.*

Jose   Ortiz, following his arrest, was indicted for one count of unlawful

distribution and possession with the intent to distribute 100 grams or more of heroin, in

violation of 21 U.S.C. § 841(a)(1) ("Count I") and one count of unlawful possession of a

———————

[*] The Honorable Richard G. Stearns, United States District Judge for the United
States District Court of Massachusetts, sitting by designation.

handgun by a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1) ("Count II"). Prior to trial, Ortiz moved to suppress certain evidence on the basis that his warrantless arrest and the warrantless search of his garage and home were unlawful. The District Court, following a suppression hearing, denied Ortiz's motion.

Ortiz entered into a conditional plea agreement with the government, which required him to plead guilty to Counts I and II but allowed him to subsequently appeal the District Court's denial of his motion to suppress. Ortiz pled guilty pursuant to the conditional plea agreement and appealed the denial of his motion to suppress. We will affirm.[1]

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

We review the District Court's findings of fact at the suppression hearing for clear error, but we generally exercise plenary review as to the District Court's application of the law to those facts. *See United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003). The determination of what constitutes a home's curtilage is "essentially factual and therefore we review only for clear error." *United States v. Benish*, 5 F.3d 20, 23-24 (3d Cir. 1993) (quotation marks and citation omitted). Similarly, we also review for clear error a District Court's determination that consent to search was voluntarily given. *See United States v. Kim*, 27 F.3d 947, 954-55 (3d Cir. 1994); *United States v. Price*, 558 F.3d 270, 278 n.7 (3d Cir. 2009). We review determinations of probable cause *de novo*. *See United States v. Whitfield*, 634 F.3d 741, 743-44 (3d Cir. 2010).

At the suppression hearing, four police officers who were members of the York County Drug Task Force — Sean Wolf, Craig Fenstermacher, Scott Nadzom, and Kenny Hassinger — testified for the government. Wolf testified that, on March 10, 2010, a cooperating confidential informant (the "CI") arranged to meet Ortiz for the purpose of purchasing heroin. This meeting was to take place at a garage Ortiz owned that was located at 100 Church Avenue, York, Pennsylvania (the "Church Avenue Garage").[2] Prior to the anticipated transaction, the officers searched the CI to ensure that he did not have any money or contraband, gave the CI $1,100 to conduct the controlled buy, and positioned themselves around the Church Avenue Garage to conduct surveillance.

Nadzom testified that he witnessed the CI walk into the Church Avenue Garage and close the door. After a few minutes, the CI exited the Church Avenue Garage and walked to Fenstermacher's car. Fenstermacher testified that the CI turned over 150 bags of heroin to him.

Ortiz exited the Church Avenue Garage and stood in the fenced lot talking to a neighbor. Nadzom gave the arrest signal and the officers entered the fenced lot to execute the arrest. Ortiz was taken into custody, returned to the Church Avenue Garage, handcuffed, and read his *Miranda* rights. After a search of Ortiz's body incident to arrest, the officers recovered the $1,100 that was given to the CI for the controlled purchase. Ortiz verbally consented to a search of the Church Avenue Garage, and he

---

[2] The Church Avenue Garage is a stand-alone structure on a fenced lot and there are no other structures on that lot.

later verbally acknowledged that he had additional heroin, approximately $8,000 in cash, and a handgun at his home. Ortiz's home was located at 106 East College Avenue, York, Pennsylvania, which was approximately three city blocks from the Church Avenue Garage.

The officers drove Ortiz to his home. There, the officers presented Ortiz with — and read aloud to him — a consent to search form. The form listed the locations that were to be searched as 106 East College Avenue and garage, the Church Avenue Garage, and vehicles. Ortiz signed the consent form and the officers conducted a search, recovering additional evidence.[3]

II.

A.

The Fourth Amendment to the United States Constitution protects against "unreasonable searches and seizures[.]" U.S. Const. amend. IV. Absent exigent circumstances, warrantless searches and seizures within a home are presumptively unreasonable. *See, e.g.*, *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011). The protections afforded to the home have been extended to the outdoor area surrounding the home known as the home's "curtilage." *See Oliver v. United States*, 466 U.S. 170, 176 (1984); *see also United States v. Dunn*, 480 U.S. 294, 300 (1987). In *United States v. Dunn*, the Supreme Court set forth four factors for courts to consider when determining whether a

---

[3] Ortiz also testified at the suppression hearing. Notably, Ortiz testified that he told the officers that he had drugs and a gun in his house only after the officers threatened to damage his house. The District Court did not credit this testimony.

particular area falls within a home's curtilage. These factors are: (1) the proximity of the area at issue to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation. *See Dunn*, 480 U.S. at 301.

Here, the District Court's holding that Ortiz was not arrested within the curtilage of his home was not clearly erroneous. As to the proximity between the Church Avenue Garage and Ortiz's home, the record demonstrates that the two were separated by several city blocks and had separate addresses. Similarly, the Church Avenue Garage was not within an enclosure surrounding Ortiz's home. As to the nature and uses of the area, the record does not demonstrate that Ortiz used the Church Avenue Garage for intimate activities of the home. Finally, although Ortiz did take some steps to protect the Church Avenue Garage area from observation by enclosing the lot with a 6-7 foot tall fence in places and a 4-5 foot tall cinder block wall in other places, it is undisputed that a passerby would have a clear view of portions of the fenced-in area as the officers did in the present case. In sum, the *Dunn* factors weigh against finding that the Church Avenue Garage was within the curtilage of Ortiz's home. Thus, the District Court did not clearly err in holding that the area where Ortiz was arrested was not entitled to the increased Fourth Amendment protections afforded to homes.

B.

Probable cause exists when circumstances within a police officer's knowledge are sufficient to warrant a prudent person to conclude that a person has been or is committing an offense. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964); *United States v. Myers*, 308 F.3d

251, 255 (3d Cir. 2002).

The record clearly demonstrates that Ortiz's arrest was supported by probable cause. Prior to the arrest, the CI identified Ortiz by a photograph as a person from whom the CI had previously purchased drugs. The CI called Ortiz's cell phone number and arranged a time to meet with and purchase heroin from Ortiz at the Church Avenue Garage. The officers searched the CI prior to the controlled buy to ensure that he was not carrying any money or contraband. The officers gave the CI $1,100 in cash and observed him walk into the Church Avenue Garage and exit a few minutes later. The CI returned to the police with 150 bags of heroin. Ortiz exited the Church Avenue Garage and stood in the fenced portion of the lot, where he was arrested. Based on the foregoing, a prudent person could conclude that Ortiz sold the heroin to the CI. Thus, the District Court did not err in holding that Ortiz's arrest was supported by probable cause.

C.

When a party in control of an area gives the police consent to search, neither a warrant nor probable cause is required to search that area. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *United States v. Price*, 558 F.3d 270, 277 (3d Cir. 2009). The government has the burden of proving that the consent was "freely and voluntarily given." *Price*, 558 F.3d at 277. Voluntariness determinations are based on the totality of the circumstances. *See United States v. Kim*, 27 F.3d 947, 955 (3d Cir. 1994) (listing circumstances to be considered as including, without limitation: the accused's age, education, intelligence, and whether he was advised of his constitutional rights or subjected to repeated and prolonged questioning).

The District Court did not clearly err when it held that Ortiz voluntarily consented to the search of his home and garage, the Church Avenue Garage, and his vehicles. The record supported that the officers maintained a conversational tone with Ortiz and that all weapons were holstered while the officers sought consent to search. The record supports a finding that the officers read Ortiz his *Miranda* rights and the consent form, and that Ortiz understood that the officers sought his permission to search his house and other areas. Although Ortiz was handcuffed, the record supports that he was treated in a courteous manner, remained cooperative, and that only approximately 15 minutes elapsed from the time that Ortiz was arrested to when he signed the consent form. Thus, based on the totality of the circumstances, the District Court did not clearly err in holding that Ortiz voluntarily consented to the search and that no search warrant was required.

Accordingly, we will affirm.