Chief Justice MARTIN
dissenting.
Subsection 20-16.2(b) of our General Statutes authorizes the police to direct the drawing of blood from an unconscious defendant who is suspected of impaired driving in order to determine the defendant’s blood-alcohol content, based on the defendant’s implied consent to a blood test. See generally N.C.G.S. § 20-16.2(a)-(b) (2015). In this case, Sergeant Ann Fowler, a supervising sergeant in the Asheville-Buncombe DWI task force, relied in good faith on this statutory provision when she accepted a portion of defendant’s blood that the attending nurse drew on the day of defendant’s arrest for impaired driving. At that time, the provision had never been held unconstitutional. It may now be unconstitutional, at least as applied to defendant, but only because of a decision that the Supreme Court of the United States issued after the State had filed a petition for review of this case in this Court. The search that was conducted in this case therefore falls into the good faith exception to the exclusionary rule under federal law. Because of that, and because— contrary to what the majority says—the State preserved its good faith exception argument for appeal, I respectfully dissent.
First, let me address the preservation issue. To understand why the majority is wrong to say that the State failed to preserve its good faith exception argument, it helps to look at what happened when.
*696 In 1993, more than two decades before this case arose, our Court of Appeals upheld subsection 20-16.2(b) against a Fourth Amendment challenge. In State v. Garcia-Lorenzo, the Court of Appeals ruled that the defendant in that case, who—like defendant here—was sedated for medical reasons and then subjected to a blood draw while unconscious, “had no constitutional right to refuse to submit to chemical analysis.” 110 N.C. App. 319, 327-30, 430 S.E.2d 290, 294-96 (1993). Citing an opinion of this Court, the Court of Appeals indicated that the General Assembly had simply “given the right to refuse to submit to chemical analysis as a matter of grace.” Id. at 330, 430 S.E.2d at 296 (citing State v. Howren, 312 N.C. 454, 456,323 S.E.2d 335, 337 (1984)). The Court of Appeals also analyzed whether the defendant’s statutory rights had been violated and found that they had not been. Id. at 330-32, 430 S.E.2d at 296-97. It then held that the evidence derived from the blood draw was admissible. See id. at 327, 332, 430 S.E.2d at 294, 297.[1]
Twenty years later, in 2013, the Supreme Court of the United States decided Missouri v. McNeely, 569 U.S. _, 133 S. Ct. 1552 (2013). McNeely held that, in drunk-driving investigations, the dissipation of alcohol in the bloodstream through natural metabolic processes does not create a per se exigency that would permit a warrantless blood draw in every case. Id. at _, 133 S. Ct. at 1556. Instead, the government has to show, on a case-by-case basis, that exigent circumstances other than the mere dissipation of alcohol are present. See id. at _, _, 133 S. Ct. at 1556, 1568.
In 2014, the search and arrest pertinent to this case took place. Defendant was detained for impaired driving, taken to a hospital for medical treatment, and subjected to a warrantless blood draw while unconscious.
In January 2015, defendant filed his motion to suppress. At the suppression hearing, which took place the next month, Sergeant Fowler testified that she relied on subsection 20-16.2(b) when she took custody *697 of defendant’s blood, and the State argued that subsection 20-16.2(b) was constitutional. Defendant responded that, under McNeely, subsection 20-16.2(b) was unconstitutional because it created a per se exigent circumstances exception to the warrant requirement. The trial court agreed with defendant, found that no other exigency to justify a warrant-less search was present in this case, and excluded the blood test results.
The State appealed. In its brief to the Court of Appeals, the State again argued that subsection 20-16.2(b) was constitutional. It also argued in its brief to the Court of Appeals that, even if that subsection were unconstitutional, the good faith exception to the exclusionary rule would make the evidence in question admissible. In April 2016, the Court of Appeals affirmed the trial court’s decision. See State v. Romano, _ N.C. App. _, _, 785 S.E.2d 168, 175 (2016). The State filed a petition for discretionary review with this Court.
In June 2016, while the State’s petition was pending in this Court, the Supreme Court of the United States decided Birchfield v. North Dakota, 579 U.S. _, 136 S. Ct. 2160 (2016). Birchfield addressed whether implied-consent laws that make it a crime for a lawfully arrested drunk-driving suspect to refuse to take a breath test or a blood test comply with the Fourth Amendment. Id. at _, _, 136 S. Ct. at 2166-67, 2184. Early in the Birchfield opinion, the Court suggested that this analysis hinged on whether a warrantless search of breath or blood is constitutional and said that, if it is, then refusing to submit to the search can be criminalized. See id. at_, 136 S. Ct. at 2172-73. Later on in the opinion, the Court found that warrantless breath tests can be criminalized because they are searches incident to arrest, but that warrantless blood tests cannot be criminalized under either a search-incident-to-arrest theory or an implied-consent theory. Id. at_, 136 S. Ct. at 2184-86. Read together, these two parts of Birchfield may indicate that it is unconstitutional to conduct a warrantless blood draw of a suspected drunk driver based only on the driver’s statutorily inferred consent. If so, then it would be unconstitutional to conduct a warrantless blood draw based only on implied consent even when the suspected drunk driver is unconscious.
After Birchfield was handed down, this Court allowed the State’s petition for discretionary review. In its briefing before this Court, the State all but concedes that subsection 20-16.2(b) is unconstitutional under Birchfield but also argues that it preserved its good faith argument for appeal, and it continues to argue that the good faith exception applies here.
*698 It is beyond dispute that the State briefed the exclusionary rule’s good faith exception before the Court of Appeals and again before this Court. So the majority’s ruling that the State’s good faith argument has not been preserved rises or falls on whether the State adequately raised that argument before the trial court. The State’s only justification for accepting the blood drawn by the nurse that Sergeant Fowler testified about at the suppression hearing, and that the State argued to the trial court at that hearing, was that Sergeant Fowler had relied on N.C.G.S. § 20-16.2(b). Because the State clearly argued that Sergeant Fowler relied on this statutory provision, the majority can maintain that the State failed to preserve its good faith argument only if, in the majority’s view, the State had to couch its statutory-reliance argument in the language of the good faith exception. In other words, the majority must think that it was wrong for the State to do what the State in fact did: argue before the trial court that Sergeant Fowler reasonably relied on the statute and that the statute was constitutional.[2]
But why should the State have to do otherwise? As we have seen, when the State opposed defendant’s motion to suppress before the trial court, binding precedent from our own Court of Appeals seemed to make it clear that subsection 20-16.2(b) withstood Fourth Amendment scrutiny. Did the State really have to make an alternative argument, in the face of then-binding caselaw that supported its main argument, that assumed the statute’s invalidity and that used the magic words “good faith exception”?
Remember, it was not until Birchfteld was decided-—and thus not until this case had already been appealed to this Court—that the Supreme Court called subsection 20-16.2(b) into constitutional doubt. When this case was still before the trial court, therefore, the State had every reason to think that Sergeant Fowler had relied on a constitutionally permitted statute that justified the search of defendant.
The majority suggests that McNeely changed the equation. Granted, McNeely had already been handed down when the trial court held the suppression hearing here. McNeely’s holding, however, was about exigency—specifically, whether exigency always exists when the police *699 suspect a person of driving drunk because alcohol in the bloodstream naturally dissipates over time. McNeely, 569 U.S. at _, 133 S. Ct. at 1556. Exigency, of course, is an exception to the warrant requirement, see, e.g., id. at _, 133 S. Ct. at 1558, meaning that an officer does not need a warrant to conduct a search when exigent circumstances exist, see, e.g., Kentucky v. King, 563 U.S. 452, 460 (2011). But an officer who has consent to conduct a search does not need a warrant either. See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). In other words, consent and exigency are two separate exceptions to the warrant requirement. It follows that an officer with consent to conduct a search does not need exigent circumstances to justify it.
This case has always been about consent. As the majority admits, “Sergeant Fowler did not. . . believe any exigency existed. Instead, she expressly relied upon the statutory authorization set forth in [subsection] 20-16.2(b) . . . .” (Brackets in original; internal quotation marks omitted.) And subsection 20-16.2(b) allows an officer to direct the drawing of blood from an unconscious suspect based on the suspect’s implied consent. See N.C.G.S. § 20-16.2(a)-(b). McNeely’s holding thus has no bearing on this case, which hinges on defendant’s consent or lack thereof, not on exigent circumstances.
So, given the state of the law as it existed at the time of the suppression hearing, the State had absolutely no reason to weaken its case by conceding that the statute on which Sergeant Fowler relied might be unconstitutional. Controlling caselaw from our Court of Appeals settled the issue—at least for the purposes of any proceedings before the trial court—and no higher court had done anything to undermine that case-law. In that situation, the State should be allowed to oppose a suppression motion by depending exclusively on the argument that a statute relied on for a Fourth Amendment search is in fact constitutional. By refusing to give the State this tactical option—even when the State has based its whole argument on an officer’s good faith reliance on a facially valid statute—the majority has effectively penalized the State for having a strong case.
To support its anti-preservation argument, the majority cites Rule 10 of the North Carolina Rules of Appellate Procedure. But, far from supporting the majority’s argument, that rule only bolsters my point. It states that, “ [i]n order to preserve an issue for appellate review, a party must . . . stat[e] the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1) (emphasis added). This rule squarely applies here. When the State is exclusively arguing before the trial court *700 that an officer relied on a statute to conduct a search, how could the State not want the trial court to rule that the officer relied on the statute in good faith? As I will discuss below, as long as the statute in question is not clearly unconstitutional, that is all that is required for the good faith exception to apply. So Rule 10 shows that, in this particular context, the State does not even need to expressly make a good faith exception argument in order to preserve that argument. A trial court should recognize that if the State loses on the Fourth Amendment merits, the State will still want the trial court to rule in its favor based on the good faith exception.
For all of these reasons, I would hold that the State has preserved its good faith exception argument for appeal. I now turn to the substantive constitutional question, which is governed exclusively by federal law.[3]
In United States v. Leon, the Supreme Court of the United States held that evidence obtained through a Fourth Amendment violation should not be excluded if, when conducting the search that led to the evidence, the police rely in good faith on a search warrant issued by a neutral and detached magistrate, even if the warrant is later found to lack probable cause. See 468 U.S. 897, 900, 925-26 (1984). The Court explained that the good faith standard is one of objective, not subjective, reasonableness. Id. at 919 n.20. Illinois v. Krull then held, based on the principles announced in Leon, that the good faith exception to the exclusionary rule also applies when the police rely in good faith on a statute authorizing warrantless searches that is later found to b.e unconstitutional. See 480 U.S. 340, 342, 349-55 (1987).
Although Krull pertained specifically to an administrative search, id. at 342, the rationale for the good faith exception that both Leon and Krull provide plainly extends to other kinds of searches as well. The Court in Leon noted that “the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates.” Leon, 468 U.S. at 916. And in Krull, the Court said that “[t]he approach used in Leon is equally applicable to the present case” because “suppress[ing] evidence obtained by an officer acting in objectively reasonable reliance on a statute would have as little deterrent effect” as suppressing evidence obtained “in objectively reasonable reliance on a warrant.” Krull, 480 U.S. at 349. Paraphrasing Leon, the Court in Krull commented that “[penalizing the officer for the [legislature’s] error, *701 rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.” Id. at 350 (second brackets in original) (quoting Leon, 468 U.S. at 921).
Other cases that the Supreme Court has handed down since Leon reinforce the good faith exception’s broad applicability. In Arizona v. Evans, for instance, the Court addressed whether the good faith exception applies when a police officer reasonably relies on a police record that indicates the existence of an outstanding arrest warrant but that is later shown to be erroneous. 514 U.S. 1, 3-4 (1995). Noting that an employee of a Clerk of Court’s office was the source of the error in that case, the Court held that the good faith exception applied. Id. at 4, 14-16. More recently, the Court held that the good faith exception applies “when the police conduct a search in compliance with binding precedent that is later overruled.” Davis v. United States, 564 U.S. 229, 232 (2011). The reason that all of these cases are decided-as they are boils down to the same core principle: that the exclusionary rule is designed to deter police misconduct, not misconduct or mistakes by other government actors. See id.) Evans, 514 U.S. at 14; Krull, 480 U.S. at 349-50; Leon, 468 U.S. at 916.
In this case, although Sergeant Fowler did not exactly “direct the taking of a blood sample,” as subsection 20-16.2(b) contemplates, she still relied on that subsection when she took custody of excess blood from a vial that the attending nurse had drawn for medical purposes. After all, if subsection 20-16.2(b) permits a blood draw from an unconscious defendant, it must also permit the lesser intrusion entailed by taking custody of blood that has already been drawn for other purposes, which is what Sergeant Fowler did here.
Sergeant Fowler’s reliance on subsection 20-16.2(b) was objectively reasonable, too. “Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law.” Krull, 480 U.S. at 349-50. To reiterate, not only was subsection 20-16.2(b) not clearly unconstitutional when defendant’s blood was drawn; it had already been held constitutional by our Court of Appeals.
The good faith exception to the exclusionary rule applies in instances where “suppression would do nothing to deter police misconduct... and . . . would come at a high cost to both the truth and the public safety.” Davis, 564 U.S. at 232. Because Sergeant Fowler relied in good faith on N.C.G.S. § 20-16.2(b) when she took custody of blood drawn by the attending nurse, and because the State preserved its argument to this *702 effect, I would hold that the good faith exception applies here. I would therefore reverse the decision of the Court of Appeals and remand for a trial in which the blood test results that defendant seeks to suppress are deemed admissible under the Fourth Amendment. As a result, I respectfully dissent.
Justices NEWBY and JACKSON join in this dissenting opinion.

. The majority downplays Garcia-Lorenzo’s significance by claiming that Garciar-Lorenzo did not “specifically address] ] or discuss[ ] the constitutionality of’ subsection 20-16.2(b). That is true in a strictly formal sense, but not in any practical sense. In Garcia-Lorenzo, the Court of Appeals discussed whether the admission of evidence obtained under the subsection was constitutional, but not whether the subsection itself was constitutional. See id. at 330, 430 S.E.2d at 296. As I have just noted, however, the Court of Appeals ruled that an unconscious defendant did not have a constitutional right to refuse a blood draw. See id. at 328-30, 430 S.E.2d at 295-96. It necessarily followed that, in the Court of Appeals’ view, subsection 20-16.2(b) was constitutional.

. The majority also cites State v. Rodrigues, a 1985 case from Hawaii, to support its argument. See 67 Haw. 496, 498, 692 P.2d 1156, 1158 (1985) (per curiam). But in Rodrigues, the State of Hawaii relied only on actual consent when arguing before the trial court that the evidence in question there was admissible. See id. at 497-98, 692 P.2d at 1157-58. Hawaii did not “even hint[ ]” at the trial court level “that [it] was also relying... on a ‘good faith’ exception theory.” Id. at 498, 692 P.2d at 1158.

. Defendant’s written motion to suppress does not refer to the state constitution, and his arguments at the suppression hearing were based solely on the Fourth Amendment.