

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00053-CR

_____

JAMES IRVEN STALEY III, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 3
Tarrant County, Texas
Trial Court No. 1744358D

Before Kerr, Womack, and Walker, JJ.
Concurring Opinion by Justice Walker

## CONCURRING OPINION

I concur with the holding and analysis in the majority opinion in this case. I write this side opinion only to point out some items that I believe are important to an understanding of the relevant law in this area, why we are bound to follow the relevant law, what the majority opinion does not mean, and what it does mean for those involved in the search warrant process.

## I.

### Legal Precedent

The late United States Supreme Court Justice Antonin Scalia once famously explained to his counterparts in the judiciary that "if you're going to be a good and faithful judge, you have to resign yourself to the fact that you're not always going to like the conclusions you reach." The reality is that following the law sometimes leads to results that are seemingly unjust, and one might rightly argue that is the net result of the conclusion reached in this case. Nonetheless, the law is rigid in this area, and despite the unfortunate outcome to which it leads, it must be followed.

From the beginning of our great nation, the Framers found it necessary to protect the American people from unreasonable searches and seizures. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated" and that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing

the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The text of the Amendment thus expressly imposes two requirements. First, all searches and seizures must be reasonable. *Kentucky v. King*, 563 U.S. 452, 459, 131 S. Ct. 1849, 1856 (2011). Second, a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity. *Id.*

American jurisprudence has proudly celebrated the rights of U.S. citizens to be protected from unlawful searches and seizures since the foundation of our government was laid, and the United States Supreme Court has routinely upheld these protections.

In *Aguilar v. Texas*, the Supreme Court held that a police officer's sworn statement that "[a]ffiants have received reliable information from a credible person and do believe" that narcotics were stored in a suspect's home—without additional facts or circumstances—did not provide a sufficient basis for a finding of probable cause. 378 U.S. 108, 109, 84 S. Ct. 1509, 1514 (1964).

In *Illinois v. Gates*, the Supreme Court explained that conclusory allegations alone in search-warrant affidavits do not support a probable cause finding and that "[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause" and that the magistrate's subsequent "action cannot be a mere ratification of the bare conclusions of others." 462 U.S. 213, 238–39, 103 S. Ct. 2317, 2332–33 (1983). The Court reasoned that "a mere conclusory statement . . .

3

gives the magistrate virtually no basis at all for making a judgment regarding probable cause." *Id.*

In *Nathanson v. United States*, the Supreme Court found a search-warrant affidavit to lack probable cause when the affiant swore that "he ha[d] cause to suspect and d[id] believe" that a particular crime had been committed but failed to include any other facts that connected the defendant to a particular crime. 290 U.S. 41, 44, 46, 54 S. Ct. 11, 12 (1933).

In Texas, our highest criminal court recently dealt with conclusory boilerplate statements contained in the four corners of a search-warrant affidavit. In *State v. Baldwin*, the Court of Criminal Appeals held that "generic . . . boilerplate language" pertaining to the use of electronic devices is not "sufficient to establish probable cause" to search those electronic devices. 664 S.W.3d 122, 129 (Tex. Crim. App. 2022).[1] The Court of Criminal Appeals held that "specific facts connecting the items to be searched to the alleged offense are required for the magistrate to reasonably determine probable cause" and that "[t]o hold otherwise would condone the search of" an electronic device "merely because a person is suspected to have committed a crime." *Id.* at 134.

---

[1]In *Baldwin*, the Court of Criminal Appeal's holding specifically addressed an insufficient search warrant as it related to the search and seizure of Baldwin's cellphone. 664 S.W.3d at 129. However, the author of this concurrence sees no reason why the law should not be likewise applied to Staley's other electronic devices.

Legal precedent is unequivocal in this matter, and we are duty bound to follow it regardless of how unfortunate the result may be. The boilerplate language in the affidavit made available to the magistrate in this case is strikingly similar to the one in *Baldwin*—a case in which our state's highest criminal court also had no choice but to overturn a murder conviction. Simply put, the instant affidavit did not delineate any specific evidence that tied Staley to the offense for which he was suspected and later charged. Instead, the affiant merely listed conclusions about the use of electronic media and how those items might generally contain evidence of crimes. Despite the outcome, the majority opinion gets it right in holding that "the affidavit here did not establish probable cause to seize and search Staley's electronic devices."

## II.

### What the Majority Opinion Does Not Mean

Even though we are bound to follow precedent in holding that the search-warrant affidavit was inadequate in this matter, it does not mean that we lack sympathy for the victim and his loved ones. On the contrary, my heart breaks because of what happened to this innocent young child. I am confident that my colleagues share in my sentiment. It was impossible for me to review the record in this case without it invoking serious emotion. I believe that I truly speak for all of us on the court in saying that we are very sorry for the victim and his family. I personally hope that they find whatever is needed to make them feel as whole, and at peace, as possible.

5

In another vein, the majority's holding does not mean that Staley is actually innocent, that the impermissibly seized evidence does not shed light on his possible guilt, or that there will not be enough evidence for the State to prosecute him. Any rational legal observer would predict that this case will almost certainly end up in another jury trial.

## III.

## What the Majority Opinion Does Mean

What the majority's holding means, like the many legal opinions that have come before it in cases where search-warrant affidavits were held to be inadequate, is that law enforcement cannot search and seize the personal belongings of citizens without probable cause. It means that all citizens can rest assured that their personal belongings will not be taken and inspected by law enforcement unless the highest legal protections are followed.

We commend law enforcement for the work that they do in trying to bring justice to victims and their families. We are also very sympathetic to the pressures that men and women in law enforcement face every day. It is not lost on us in the judiciary that those in law enforcement often deal with seemingly impossible tasks. In the face of an insurmountable workload, there is the constant pressure to afford crime victims quick justice—all while dealing with a public that is seemingly, and often unfairly, more and more hostile to their efforts. But the law is the law, and we are duty bound to follow it.

It is safe to presume that few citizens, if any, desire to live in a world where those in power can take the personal belongings of the citizenry and search them without the highest possible protections being in place. Who wants to live in a society where a police officer can tender a conclusory search-warrant affidavit to a magistrate; secure a warrant from said magistrate; and then seize and search our homes, cars, computers, phones, and even our personal diaries?

I know that those in law enforcement similarly appreciate the Constitutional rights that we have in our country and those that protect us from unlawful governmental intrusion. Accordingly, it is my hope that the majority opinion will encourage those in law enforcement and magistrates alike to be more thorough—as the law requires—in the application and issuance of search warrants.

## IV.

### Why Probable Cause Matters

It matters for defendants and victims that those in law enforcement apply for and obtain search warrants in compliance with the law. It matters for the sake of justice, and it matters because—whether they realize it or not—crime victims depend on it. Two rights cannot make a wrong, nor can two wrongs make a right. If evidence is not seized and searched in accordance with the appropriate process, it can lead to unjust results for all parties.

That is why it is paramount for those in law enforcement to do whatever is necessary to ensure that there are sufficient and particularized facts in their respective

7

search-warrant affidavits that actually and specifically connect alleged suspects to the potential crimes in which they are being investigated. *See Baldwin*, 664 S.W.3d at 133.

## V.

## Conclusion

Having set forth these additional reasons, I concur with the majority's holding.


/s/ Brian Walker
Brian Walker
Justice


Publish

Delivered:  March 6, 2025