[J-112-2016] [MO: Todd, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## WESTERN DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 11 WAP 2016 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court entered December 21, 2015 at |
| | : | No. 1829 WDA 2014, affirming the |
| v. | : | Judgment of Sentence of the Court of |
| | : | Common Pleas of Erie County entered |
| | : | October 20, 2014 at No. CP-25-CR- |
| VICTORIA LIVINGSTONE, | : | 0002750-2013 |
| | : | |
| Appellant | : | ARGUED:  November 2, 2016 |

## CONCURRING AND DISSENTING OPINION

**JUSTICE DONOHUE**                    **DECIDED: NOVEMBER 27, 2017**

I join the Majority in holding that Ms. Livingstone was subjected to an investigative detention when Trooper Franz pulled his marked cruiser – emergency lights activated – alongside her parked vehicle on the shoulder of I-79.  The Court's express rejection of the myth that a reasonable person in the circumstances presented would have believed she was free to leave finally comports the law with reality. Because Trooper Franz concededly lacked reasonable suspicion that any criminal activity was underway when he detained Ms. Livingstone, we must address whether the seizure was nonetheless justified.  Accordingly, we decide whether Pennsylvania should, pursuant to a "community caretaking" rationale, recognize a "public servant" exception to the Fourth Amendment's warrant requirement.

I agree with the Majority that adopting a public servant exception is appropriate and I would also hold that the exception has no application under the facts presented

here.[1]  I write separately because I diverge from the Majority on two points.  First, I believe it is critical to recognize that *Cady v. Dombrowski*, 413 U.S. 433 (1973), did not create an exception to the Fourth Amendment warrant requirement that is nearly as broad or intrusive as the one we recognize today.  *Cady* is foundational because it recognized that, in addition to law enforcement, police legitimately perform community caretaking functions which may, in part, provide the rationale for recognizing an exception to the warrant requirement.  *Id.* at 441.  That said, the warrantless seizure of an individual motorist contemplated here is poles apart from the warrantless inventory search of an impounded automobile, conducted pursuant to standard police procedure, validated by *Cady.*  Because, drawing from *Cady*, we recognize today that our police officers sometimes legitimately detain motorists solely in the pursuit of rendering aid, I agree that we should validate such seizures by also recognizing a public servant exception to the Fourth Amendment's warrant requirement in specifically defined circumstances.

Second, in light of the magnitude of the government intrusion we are authorizing today, I strongly disagree with the "independent from" language employed in the second prong of the Majority's "reasonableness" test.  In my view, we must, at a minimum, hold

---

[1]  We are considering a community caretaker exception to the warrant requirement, under limited circumstances, pursuant to the Fourth Amendment of the United States Constitution.  No party has raised, and we do not address, whether such an exception would pass muster under Article I, Section 8 of the Pennsylvania Constitution.  I note that this Court has interpreted Article I, Section 8 as providing privacy protections beyond those ensured by the United States Constitution.  *See Commonwealth v. Edmunds*, 586 A.2d 887, 899 (Pa. 1991) (emphasizing that the Pennsylvania Constitution "has historically been interpreted to incorporate a strong right of privacy, and an equally strong adherence to the requirement of probable cause under Article 1, Section 8").

true to the parameters established in *Cady* when relying on the caretaking function of our police officers to allow a seizure. I view *Cady*'s requirement that the caretaking function must be totally divorced from any law enforcement purpose to be an essential safeguard to protecting the Fourth Amendment rights of Pennsylvania motorists, on whom this new "public servant" exception will have an enormous impact. *See Cady*, 413 U.S. at 441.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be search, and the persons or things to be seized.

U.S. Const. amend. IV. The high Court has explained that the Fourth Amendment imposes two requirements: all searches and seizures must be reasonable, and a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity. *Kentucky v. King*, 563 U.S. 452, 459 (2011) (citing *Payton v. New York,* 445 U.S. 573, 584 (1980)). This is because "the basic purpose of the Fourth Amendment … is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Camara v. Municipal Court*, 387 U.S. 523, 528 (1967).[2]

---

[2] The Fourth Amendment does not contemplate a benevolent, or "caretaking," government. Rather, "the central meaning of the Fourth Amendment is distrust of police power and discretion" and its "underlying vision … places the magistrate as a buffer between the police and the citizenry, so as to prevent the police from acting as judges in their own cause." Tracey Maclin, *The Central Meaning of the Fourth Amendment*, 35 Wm. & Mary L. Rev. 197, 201, 213-14 (1993) (noting that the Fourth Amendment "synchronizes with other parts of the Constitution designed to limit governmental (continued…)

While a warrant is generally necessary, Fourth Amendment jurisprudence has developed so that a search or seizure may be deemed reasonable absent a warrant if one of a few well-defined exceptions applies. *Birchfield v. North Dakota*, 136 S.Ct. 2160, 2173 (2016). These exceptions include, inter alia, exigent circumstances, *see Kentucky,* 563 U.S. 452; the "plain view" exception, *see Horton v. California*, 496 U.S. 128 (1990); searches incident to arrest, *see United States v. Robinson*, 414 U.S. 218 (1973); consent searches, *see Schneckloth v. Bustamonte*, 412 U.S. 218 (1973); and automobile searches, *see California v. Carney*, 471 U.S. 386 (1985). A police officer may also briefly detain a person without a warrant or probable cause, so long as the officer possesses a reasonable suspicion that the individual is or is about to be engaged in criminal activity. *See United States v. Cortez*, 449 U.S. 411, 417 (1981); *see also*

---

(…continued)
powers"); *cf*. Ronald J. Bacigal, *Some Observations and Proposals on the Nature of the Fourth Amendment*, 46 Geo. Wash. L. Rev. 529, 558 (1978) ("The Bill of Rights … and the fourth amendment in particular are restrictions on unfettered governmental power rather than reflections of natural law rights.").

Jurists and scholars alike have described the broad principle in similar terms. *See, e.g.*, *Olmstead v. United States*, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting) (The framers "conferred, as against the Government, the right to be let alone—the most comprehensive of rights and the right most valued by civilized men. To protect that right, every unjustifiable intrusion by the Government upon the privacy of the individual, whatever the means employed, must be deemed a violation of the Fourth Amendment."); *Boyd v. United State*s, 116 U.S. 616, 635 (1886) ("[C]onstitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half of their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon."); Jacob W. Landynski, *Search and Seizure and the Supreme Court* 47 (1966) ("[T]he Fourth Amendment embodies a spiritual concept: the belief that to value the privacy of home and person and to afford it constitutional protection against the long reach of government is no less than to value human dignity, and that this privacy must not be disturbed except in case of overriding social need, and then only under stringent procedural safeguards.")

*Terry v. Ohio*, 392 U.S. 1 (1968) (validating pat down for weapons for protection of officer, absent probable cause, if officer has "reason to believe he is dealing with an armed and dangerous individual"). Additionally, in recognition that police officers have certain administrative duties, the United States Supreme Court has sanctioned warrantless inventory searches of automobiles in lawful police custody, absent probable cause or reasonable suspicion, where the searches are performed pursuant to standardized procedures. *See, e.g., Harris v. United States*, 390 U.S. 234, 237 (1968).

*Cady* is an inventory search case.[3] In *Cady*, the Supreme Court considered whether a driver's Fourth Amendment rights had been violated when local Wisconsin police conducted a warrantless search of his car. The driver had been involved in a one-car accident the day before. Following the accident, police arrested the man – who identified himself as a member of the Chicago police force – for drunk driving. They had his disabled car towed to a garage some distance from the police station, where it sat unguarded. Because the driver sustained injuries in the accident, he was taken to the hospital for treatment.

Early the next day, one of the local officers searched the car, including the trunk, for the driver's service revolver. The officer was under the impression that members of the Chicago police force were required to carry their revolvers at all times. Because the driver did not have a revolver when he was arrested, the officer believed the weapon might be in the car and could pose a danger to the public if discovered by vandals.

---

[3] Justice Brennan poignantly recognized that the *Cady* Majority Opinion represented "a serious departure from established Fourth Amendment principles." *Cady,* 413 U.S. at 454 (Brennan, J., dissenting) (urging that a professed purpose to protect public safety should not, absent exigent circumstances, "eliminate the necessity for compliance with the warrant requirement").

During the search, the officer found various items covered with blood, including a nightstick with the driver's name stamped on it. Confronted with this information, the driver authorized his attorney to disclose to police that there was a dead body lying on his brother's nearby farm. The driver was subsequently convicted of first-degree murder.

The *Cady* Court relied on two of its prior "inventory search" cases to validate the officer's search for the revolver. *See Cady*, 413 U.S. at 445-47 (discussing *Harris*, 390 U.S. 234, and *Cooper v. California*, 386 U.S. 58 (1967)). In *Harris*, the high Court deemed a warrantless automobile search reasonable under the "narrow circumstances" presented therein because a police department regulation required officers to inventory impounded vehicles for the purpose of safeguarding the owner's property. *Harris*, 390 U.S. at 236. In *Cooper*, the driver of a car was arrested for selling heroin. The Court in *Cooper* explained that a warrantless search of the vehicle one week later was justified because the officers were required by state law to impound the car pending forfeiture proceedings, and "it would be unreasonable to hold that the police, having to retain the car in their custody [for many months,] had no right, even for their own protection, to search it." *Cooper*, 386 U.S. at 61-62. In each case, the Supreme Court emphasized the importance of the police department regulation (*Harris*) and the state law (*Cooper*) as essential safeguards for cabining officer discretion in the absence of probable cause or exigent circumstances.

Similarly, the *Cady* Court explained that certain factual considerations supported the finding that the warrantless search was reasonable. First, because the disabled car represented a nuisance on the highway (and because the driver was incapacitated) the

police exercised custody or control over the car to remove it from the road for reasons of safety. *Cady*, 413 U.S. at 442-43. Second, the search of the car's trunk occurred pursuant to "'standard procedure in (that police) department,' to protect the public from the possibility that a revolver would fall into untrained or perhaps malicious hands." *Id.* at 443. The Court explained that "concern for the safety of the general public who might be endangered if an intruder removed a revolver from the trunk of the vehicle" was a justification "as immediate and constitutionally reasonable" as the justifications in *Harris* and *Cooper*. *Id.* at 447. Critically, the record in *Cady* contained uncontradicted testimony that the purpose of the officer's search was to protect the public, a purpose that was unassailable since, at the time of the search, the officer had no idea that a murder, or any other crime, had been committed. *Id.* Recognizing community caretaking functions of police officers, the high Court stated "local police officers … frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, **totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute**." *Id.* at 441 (emphasis added).

The high Court has cited *Cady* to justify subsequent warrantless inventory searches, consistently emphasizing the importance of standardized procedures to constrain police conduct where neither probable cause nor reasonable suspicion operate to do so. *See Colorado v. Bertine*, 479 U.S. 367, 375 (1987) (upholding warrantless inventory search in light of fact that officer discretion was "exercised according to standard criteria and on the basis of something other than suspicion of

evidence of criminal activity"); *Illinois v. Lafayette*, 462 U.S. 640, 643 (1983) (explaining that "a single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront"); *South Dakota v. Opperman*, 428 U.S. 364 367-76 (1976) (deferring to "police caretaking procedures designed to secure and protect vehicles and their contents within police custody").

By contrast, in the forty plus years since it decided *Cady,* the United States Supreme Court has neither established a broad "community caretaker" exception to the warrant requirement nor relied upon *Cady* to sanction warrantless police conduct not cabined by standardized procedure. While recognizing that seizing a citizen is, by degrees of magnitude, more intrusive than the warrantless inventory search validated in *Cady*, I nonetheless would adopt a "public servant" exception because *Cady*'s tenet that police perform a caretaking function remains viable. Police officers can and do, in the line of duty, effectuate seizures for the sole purpose of rendering assistance[4] and citizens of this Commonwealth have come to expect that police officers will not turn a blind eye to motorists in distress.

Although *Cady* recognized this caretaker function as one of the bases for allowing an exception to the warrant requirement, it bears repeated emphasis that the decision was based on the equal recognition that standard police procedure was

---

[4] For example, since 1929, Pennsylvania State Police have been required to memorize a Call of Honor which, among other obligations, recognizes the "duty to be of service to anyone who may be in danger or distress." *See* Pennsylvania State Police Call of Honor, https://www.psp.pa.gov/About%20Us/Pages/Call-of-Honor.aspx (last visited July 26, 2017).

followed and that the caretaking function was totally divorced from any law enforcement function.

Given the magnitude of the government intrusion, *Cady*'s requirement that community caretaking conduct by police must be "totally divorced" from any law enforcement purpose is all the more crucial in recognizing the public servant exception for seizures of motorists. Accordingly, I have serious concerns about a core aspect of the test set forth by the Majority. To justify a warrantless seizure under our newly created exception, the Majority requires:

> [T]he officer must point to specific, objective, and articulable facts which would reasonably suggest to an experienced officer that assistance was needed; the police action must be independent from detection, investigation, and acquisition of criminal evidence; and, based on a consideration of the surrounding circumstances, the action taken by police must be tailored to rendering assistance or mitigating the peril.

Majority Op. at 42-43.[5] The Majority's second prong ignores *Cady*'s clear mandate, replacing the words "totally divorced" with the much weaker "independent from." In my view, any application of the public servant exception must be strictly limited to circumstances in which the police action in question is, as in *Cady*, "totally divorced" from investigating crime, and must be motivated solely by the police officer's objectively reasonable belief that someone is in need of assistance. *See Cady*, 413 U.S. at 441. The integrity of the Fourth Amendment cannot countenance a lesser standard.

The warrant requirement cannot be abrogated where the purported performance of the community caretaking function is comingled with the investigation and detection

---

[5] Additionally, the Majority states, and I agree, that "once assistance has been provided or the peril mitigated, further police action will be evaluated under traditional Fourth Amendment jurisprudence." Majority Op. at 43.

of criminal activity. The "independent from" test adopted by the Majority allows the two distinct functions to coexist such that seizures that were actually motivated by an officer's desire to investigate a crime may be validated so long as there were also "specific, objective, and articulable facts" indicating that someone might need assistance. *See* Majority Op. at 42-43. To allow any amount of criminal investigative motivation into a warrantless detention of a motorist is a sword to the heart of the Fourth Amendment, absent at least reasonable suspicion. I would hold that if an officer is motivated to any degree by a desire to investigate crime, the individual seized must be afforded his or her full panoply of Fourth Amendment rights.

The Majority posits that the high Court's "totally divorced" language in *Cady* "was more of an observation … rather than a specific requirement." Majority Op. at 39 n. 14. This position is not supported by the facts of the case or the statements of the *Cady* Court. In no uncertain terms, the *Cady* Court relied on "community caretaking functions" as the basis for the exception where such police conduct is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady*, 413 U.S. at 441. Moreover, in *Cady*, the search was in fact "totally divorced" from any investigative purpose. As specifically noted by the high Court, the officer in *Cady* was motivated by "concern for the safety of the general public who might be endangered if an intruder removed a revolver from the trunk of the vehicle" while simultaneously, the officer was "ignorant of the fact that a murder, or any other crime, had been committed." *Id.* at 447. Coupled with the finding that the officer followed standard procedure, it was critical to the *Cady* Court's holding that the officer's purpose had nothing to do with a desire to investigate a crime.

Citing language from sister state courts and *Brigham City, Utah v. Stuart*, 547 U.S. 398 (2006), the Majority posits that "a coinciding subjective law enforcement concern by the officer will not negate the validity of an objectively reasonable caretaking seizure." Majority Op. at 40-42. In *Brigham City*, the United States Supreme Court explained that "[a]n action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively* justify [the] action.' The officer's subjective motivation is irrelevant." *Brigham City*, 547 U.S. at 404.[6] I would argue, however, that *Brigham City* does not foreclose consideration of an officer's motives under a public servant caretaking exception. In that case, the high Court held that police could enter a home without a warrant when there were people inside "who are seriously injured or threatened with such injury." *Id.* at 403. In so doing, the Court rejected an argument that the officers' conduct was unreasonable because it was motivated more by the desire to make an arrest than by a desire to "save lives and property," stating that "the subjective motivations of the individual officers … have no bearing on whether a particular seizure is 'unreasonable' under the Fourth Amendment." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

It cannot be ignored that the subjective intent of the officers in *Brigham City* was in fact irrelevant because the situation in *Brigham City* presented "an exigency or emergency." *Id.* Where exigent circumstances demand immediate police response, the

---

[6] It has been noted that the modern Supreme Court's focus on the "reasonableness clause" of the Fourth Amendment, *see, e.g., United States v. Rabinowitz*, 339 U.S. 56, 65 (1950), undermines the broad principle of the limitations on government power the framers intended to declare, while minimizing the import of the warrant requirement. *Id.* at 69 (Frankfurter, J. dissenting); Maclin, 35 Wm. & Mary L. Rev. at 228.

emergency itself permits the exercise of police discretion because society does not expect a police officer to turn a blind eye where conditions present an imminent risk of serious harm. *See id.*; *see also* Michael R. Dimino, Sr., *Police Paternalism: Community Caretaking, Assistance Searches, and Fourth Amendment Reasonableness*, 66 Wash. & Lee L. Rev. 1485, 1534 (Fall 2009). With respect to the public servant exception, however, a failure to consider subjective motivation permits courts to review police conduct less strictly in circumstances where the potential for arbitrariness is the greatest – namely, where there is neither an emergency nor probable cause to believe a crime has been committed. Dimino, 66 Wash. & Lee L. Rev. at 1534.[7]

Notably, in the instant matter, we are not faced with a mixed motive scenario. The police officer's testimony indicates that he was motivated to detain Ms. Livingstone solely because he believed she might need assistance. Nothing in the record suggests that his purpose was clouded by investigative aims. The seizure here was unreasonable because the officer's subjective motivation to render assistance was not substantiated by specific, objective factors. Absent any articulable indicia of distress, it

---

[7] The Supreme Court expressed its preference for an objective reasonableness analysis in *Whren v. United States*, 517 U.S. 806, 813 (1996), as well. There, the Court rejected an argument that a police officer's detention of a motorist based on probable cause to believe a traffic violation had occurred was nonetheless unreasonable where the officer's true motive was to investigate possible drug dealing activity. *Id.* at 811. "Only an undiscerning reader would regard these cases as endorsing the principle that ulterior motives can invalidate police conduct that is justifiable **on the basis of probable cause to believe that a violation of the law has occurred.**" *Id.* (emphasis added). Thus, *Whren*'s distaste for considering an officer's subjective motivations was tied to the existence of an independent legal justification (probable cause) for the warrantless conduct. In the case of a public servant exception, no such independent legal justification for the warrantless conduct exists, as probable cause and reasonable suspicion are, by definition, lacking. Requiring that the officer lack a subjective intent to investigate a crime constrains police action in the absence of traditional constraints.

was objectively unreasonable for the officer to detain Ms. Livingstone, regardless of his professed belief that she might need help.

Thus, while the intent to act as a caretaker is not in itself sufficient to justify a warrantless seizure, probing the subjective intent to so act is necessary. Moreover, for that motivation to be "totally divorced" from a law enforcement purpose, it must stand alone.[8] Where an officer testifies that he was motivated to any degree by a desire to investigate a possible criminal violation, our inquiry into the reasonableness of the seizure is over because it was unconstitutional. If, on the other hand, an officer professes that his caretaking motives were pure,[9] I would require that the police officer's belief that a person seized needed help must be objectively reasonable (as evidenced by articulable facts), and that the seizure must be tailored in scope to address the caretaking purpose.

We are today injecting realism into our jurisprudence by recognizing that a police officer in a vehicle with emergency lights ablaze effectuates a seizure of a motorist who, under such circumstances, cannot be deemed to believe that he or she is free to leave. By recognizing the significant constitutional dimension of this act by a police officer, in

---

[8] If police officers cannot conduct themselves purely for the purpose of rendering aid, we should not adopt a public service exception to the warrant requirement. However, as noted, experience teaches that police officers can and do render aid for the sole purpose of assisting motorists in distress.

[9] In this regard, the defendant must be given the opportunity to test the police officer's motivation. By way of example, I highlight the facts of *State v. Kurth*, 813 N.W.2d 270 (Iowa 2012). There, the Iowa Supreme Court invalidated the seizure of a driver in a parked vehicle upon observing the evidence that the police officer's action of calling in the license plate number on the defendant's vehicle before effectuating the seizure was "inconsistent with a public safety purpose but is certainly consistent with an investigative purpose." *Id.* at 279.

my view, we must also strictly circumscribe the situations in which we countenance the intrusion in the absence of the Fourth Amendment's warrant requirement protections. For the reasons previously stated, I would require that the police officer's motivation to provide aid and assistance – to "caretake" – must be pure and thus totally divorced from the investigation or detection of a crime. Because, the Majority expressly allows the comingling of caretaking and law enforcement functions to avoid the warrant requirement, I dissent from that aspect of the Majority Opinion. I join the remainder of the Majority Opinion.

Justice Wecht joins this concurring and dissenting opinion.