NOT DESIGNATED FOR PUBLICATION

No. 115,694

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JERSHAWN L. PHOENIX,
*Appellant*.


MEMORANDUM OPINION

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion on remand filed April 19, 2019. Affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Jennifer S. Tatum*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before STANDRIDGE, P.J., BUSER, J., and MCANANY, S.J.


PER CURIAM:  After granting review, the Kansas Supreme Court remanded this case for reconsideration in light of its recent decision in *White v. State*, 308 Kan. 491, 421 P.3d 718 (2018), which held that the 2016 amendments to K.S.A. 60-1507(f) were not retroactive. As directed, we have reconsidered the facts of this case in light of *White* and, for the following reasons, affirm the district court's decision.

1

FACTS

On October 26, 2007, Jershawn L. Phoenix was charged with one count of rape and one count of aggravated criminal sodomy. The charges were based on allegations that Phoenix digitally raped and orally sodomized his 13-year-old cousin. Phoenix was arrested at his home and, as he was being led away, Phoenix spontaneously acknowledged that he knew why he was being arrested. Later, Phoenix provided a formal statement to a police investigator about the events surrounding the alleged attack.

At a *Jackson v. Denno* hearing held on April 30, 2009, the district court determined that both the spontaneous utterance and the subsequent formal statement were voluntarily made and therefore admissible. The district court also determined that evidence of an incriminating phone call made by Phoenix from jail was admissible.

On August 27, 2009, Phoenix pled guilty to one count of aggravated criminal sodomy, admitting that he orally sodomized the 13-year-old victim. In exchange for the plea, the State dismissed the remaining rape charge in this case as well as all charges in a separate criminal case pending against Phoenix. The State also agreed to recommend a downward durational departure prison sentence to 129 months in lieu of the presumptive guideline sentence of life without the possibility of parole for 25 years.

On October 21, 2009, the district court imposed the departure sentence recommended by the State. Phoenix did not file a direct appeal from the conviction and sentence.

On July 2, 2013, Phoenix filed a motion to correct an illegal sentence, alleging procedural irregularities in the charging document. The district court summarily denied that motion, finding that the charging document was not defective as claimed. Phoenix did not appeal this ruling.

On March 26, 2015, Phoenix filed a pro se motion for an evidentiary hearing pursuant to *State v. Van Cleave*, 239 Kan. 117, 716 P.2d 580 (1986). In the motion, Phoenix alleged that both of his appointed trial counsel were ineffective by failing to investigate the facts or law surrounding his warrantless arrest and by failing to pursue any defense in this matter. Although the original motion requested a *Van Cleave* hearing, the district court construed the motion as a request for relief pursuant to K.S.A. 60-1507 and summarily dismissed it as untimely.

Phoenix appealed, arguing the district court erred in denying his K.S.A. 60-1507 motion without appointing counsel and holding at least a preliminary hearing on his claims. On May 5, 2017, a panel of this court affirmed the decision of the district court to dismiss the claim for relief. *State v. Phoenix*, No. 115,694, 2017 WL 1826048 (Kan. App. 2017) (unpublished opinion). Specifically, the panel made a finding that Phoenix's motion was untimely filed and held that manifest injustice did not exist to justify the untimely filing. 2017 WL 1826048, at *5.

On October 12, 2017, the Supreme Court granted Phoenix's petition for review.

On July 6, 2018, the Kansas Supreme Court issued its decision in *White*. In that case, the Supreme Court held that the 2016 amendments to K.S.A. 60-1507(f)—which limit the scope of the court's manifest injustice inquiry—were not retroactive. In light of its decision in *White*, the Kansas Supreme Court summarily vacated the order of dismissal in Phoenix's case and remanded it for us to reconsider Phoenix's claim using the more broad preamendment manifest injustice inquiry set forth in *Vontress v. State*, 299 Kan. 607, Syl. ¶ 8, 325 P.3d 1114 (2014).

ANALYSIS

A defendant has one year from when a conviction becomes final to file a habeas corpus motion. K.S.A. 60-1507(f)(1). Phoenix was sentenced on October 21, 2009. He did not file an appeal; thus, his conviction became final on November 4, 2009. This means Phoenix had until November 4, 2010, to file a habeas corpus motion. But Phoenix did not file his motion requesting an evidentiary hearing on the issue of ineffective assistance of trial counsel until March 26, 2015, over four years after the deadline.

Notably, the one-year time limitation for bringing an action may be extended by the district court to prevent manifest injustice. K.S.A. 60-1507(f)(2). But Phoenix did not acknowledge the untimely nature of his filing or make any claim of manifest injustice in the pro se pleading he filed with the district court, even though the State asked the district court to deny Phoenix's motion for relief based on its untimeliness. And the district court ultimately dismissed the motion, in part, based on Phoenix's failure to file it before the November 4, 2010 deadline. Not surprisingly, the district court did not discuss the issue of manifest injustice in its order denying Phoenix relief because Phoenix never raised the issue in his pleading.

*Preservation*

Phoenix claims for the first time on appeal that the one-year time limitation for bringing his ineffective assistance of counsel claim should be extended in this case to prevent manifest injustice. See K.S.A. 60-1507(f)(2). Generally, issues not raised before the trial court cannot be raised on appeal. *State v. Carter*, 305 Kan. 139, 159, 380 P.3d 189 (2016). An appellate court may consider a new argument on appeal only if the newly asserted theory involves a pure question of law arising on proved or admitted facts that is finally determinative of the case or if consideration of the new theory is necessary to

serve the ends of justice or to prevent denial of fundamental rights. *State v. Northern*, 304 Kan. 860, 864-65, 375 P.3d 363 (2016).

Phoenix does not cite to any of these exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal. In fact, Phoenix does not even acknowledge in his appellate brief that he is raising the issue of manifest injustice for the first time on appeal. Kansas Supreme Court Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 34) requires an appellant to explain why an issue not raised below should be considered for the first time on appeal. Litigants who fail to comply with this rule risk a ruling that the issue is improperly briefed, and the issue will be considered waived or abandoned. *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014); see *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015) (holding that Rule 6.02[a][5] is to be strictly enforced). Because Phoenix provides no justification for this court to consider counsel's ineffectiveness for the first time on appeal, we decline to consider the issue.

*Manifest injustice*

But even if Phoenix had preserved the issue, he is not entitled to relief because he fails to establish that the one-year time limit for bringing a claim of ineffective assistance of counsel must be extended in order to prevent manifest injustice in this case.

Relevant here, the definition of manifest injustice has changed over the course of the last few years. In 2014, the Kansas Supreme Court held that manifest injustice must be determined by considering whether: (1) the movant provides persuasive reasons or circumstances that prevented him or her from filing the K.S.A. 60-1507 motion within the time limitation, (2) the merits of the movant's claims raise substantial issues of law or fact deserving the district court's consideration, and (3) the movant sets forth a colorable claim of actual innocence. *Vontress*, 299 Kan. 607, Syl. ¶ 8.

5

In 2016, the Legislature amended the habeas statute, codifying the first and third factors set out by the *Vontress* court while removing the second factor from consideration. L. 2016, ch. 58, § 2, see K.S.A. 2018 Supp. 60-1507(f)(2)(A). Therefore, manifest injustice, as defined by the amended statute, now requires the court to only consider: (1) "why the prisoner failed to file the motion within the one-year time limitation or [2] whether the prisoner makes a colorable claim of actual innocence." K.S.A. 2018 Supp. 60-1507(f)(2)(A).

In *White*, the Kansas Supreme Court held that the 2016 amendments to K.S.A. 60-1507 do not apply to motions filed before July 1, 2016. 308 Kan. 491, Syl. ¶ 1. In this case, Phoenix filed his habeas motion before July 1, 2016. Under the holding in *White* then, we must consider all three *Vontress* factors to determine whether manifest injustice warrants an extension of the one-year time limitation for filing the habeas petition in this case.

With regard to the first and third factors, Phoenix failed to provide a reason for his late filing and did not make a claim of actual innocence. Thus, the only issue remaining for this court to address is whether the merits of Phoenix's claims raise substantial issues of law or fact deserving the district court's consideration. See *Vontress*, 299 Kan. 607, Syl. ¶ 8.

To that end, Phoenix asserts in his appellate brief that the merits of his ineffective assistance of counsel claims raise a substantial issue deserving of the court's consideration and therefore warrants an extension of time to file his habeas petition. To prevail on a claim of ineffective assistance of counsel, a movant must establish (1) counsel's performance was deficient under the totality of the circumstances and (2) prejudice, i.e., a reasonable probability that but for counsel's deficient performance, the outcome of the proceeding would have been different. See *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

6

*Deficient performance*

Phoenix claims trial counsel's performance was deficient based on counsel's failure to file a motion claiming that Phoenix's arrest was illegal and, in turn, to file a motion to suppress as fruit of the poisonous tree the three inculpatory statements he made while in custody after his illegal arrest. In support of this claim, Phoenix sets forth the following facts:

> "[O]n October 24, 2007, Kansas City, Kansas Police Officer Jason Pittman arrived at Mr. Phoenix's residence and knocked on the door, which Mr. Phoenix answered by opening. Mr. Phoenix then alleges Officer Pittman asked 'do you know where I can find (Jershawn Phoenix)?' at which point Mr. Phoenix attempted to close the door. However, Officer Pittman prevented Mr. Phoenix from shutting his front door by placing his foot in the doorway, and then forced his way into Mr. Phoenix's home."

Officer Pittman's testimony at the *Jackson v. Denno* hearing is consistent with Phoenix's rendition of the relevant facts:

> "Q:   [A]fter you spoke to all the witnesses, you did make attempts to take the defendant into custody?
> "A:   I did.
> "Q:   Where did that take place?
> "A:   At his residence
> "Q:   And where was that?
> "A:   At [address omitted].
> "Q:   How did you make contact with Mr. Phoenix?
> "A:   I knocked on the door.
> "Q:   And what happened when you knocked on the door?
> "A:   He opened it.
> "Q:   What happened when he opened the door?
> "A:   He started to shut it and I stuck my foot in the door.
> "Q:   Defendant started to close the door?

"A: Yeah.

"Q: And after you stuck your foot in the door, up until that point, had either you or the defendant said anything to one another?

"A: No.

"Q: What happened after you stuck your foot in the door?

"A: I handcuffed him.

"Q: Did you handcuff him inside the residence or outside the residence?

"A: We were inside the residence[,] like right in the doorway."

Phoenix claims that Officer Pittman's actions in crossing the threshold of the doorway into his home to effectuate his arrest was accomplished without the existence of exigent circumstances and therefore violated his constitutional right to be free from unreasonable seizures. Phoenix then claims his trial counsel's performance was deficient in failing to file a motion to suppress subsequent statements based on the illegal arrest.

Applying United States Supreme Court precedent on exigent circumstances, however, we are not persuaded the arrest in this case was illegal. Courts generally recognize four types of exigent circumstances that may obviate the warrant requirement in a case such as this: (1) preventing harm to law enforcement officers or others by capturing a dangerous suspect, see *Warden v. Hayden*, 387 U.S. 294, 298-99, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967); (2) securing evidence in the face of its imminent loss, see *Kentucky v. King*, 563 U.S. 452, 455, 131 S. Ct. 1849, 179 L. Ed. 2d 865 (2011); (3) hot pursuit of a fleeing suspect, see *United States v. Santana*, 427 U.S. 38, 42-43, 96 S. Ct. 2406, 49 L. Ed. 2d 300 (1976); and (4) thwarting escape of a suspect, see *Welsh v. Wisconsin*, 466 U.S. 740, 759, 104 S. Ct. 2091, 80 L. Ed. 2d 732 (1984) (White, J., dissenting).

The facts presented here are analogous to those presented in *Santana*. In *Santana*, an undercover narcotics officer arranged to buy heroin from Patricia McCafferty and waited while she obtained the drugs from "Mom Santana." McCafferty returned with the

8

heroin and was arrested. Moments later, officers observed Santana standing in the doorway of her home, holding a bag which contained packets of heroin. As the officers approached the house and identified themselves, Santana retreated into her vestibule. The police followed her into the house and arrested her. Santana was subsequently convicted for possession of heroin with intent to distribute. In affirming Santana's conviction, the Court first held that she had no reasonable expectation of privacy while standing in her doorway. 427 U.S. at 42. And, since the officers had probable cause to believe that she had committed a felony, there was no Fourth Amendment violation when they proceeded to arrest her without a warrant because the officers were in "hot pursuit" of an individual they had probable cause to believe had committed a crime. 427 U.S. at 42-43. The Court specifically noted that Santana's retreat into her house could not thwart an otherwise proper arrest:

> "The fact that the pursuit here ended almost as soon as it began did not render it any the less a 'hot pursuit' sufficient to justify the warrantless entry into Santana's house. Once Santana saw the police, there was likewise a realistic expectation that any delay would result in destruction of evidence." 427 U.S. at 43.

Having found Phoenix's arrest was lawful, we necessarily find no merit to Phoenix's claim that trial counsel's performance was deficient for failing to file a motion to suppress based on an unlawful arrest.

*Prejudice*

Even if Phoenix had established deficient performance, he has failed to show the prejudice required to prevail on an ineffective assistance of counsel claim. When the defendant pleads guilty, the prejudice that must be shown is that but for counsel's errors, there was a reasonable probability the defendant would not have pled guilty and would have insisted on going to trial. *State v. Kelly*, 298 Kan. 965, 969-70, 318 P.3d 987 (2014).

9

To support his claim of prejudice, Phoenix alleges the following in his appellate brief:

"Had these statements, been excluded as evidence, Mr. Phoenix *may* have taken his case to trial, in which he could have won acquittal. However, the inclusion of his three statements into evidence *likely* changed the calculus of his decision making, dissuading him from taking his case to trial, and foregoing his constitutional right to a fair trial." (Emphasis added.)

We find Phoenix's conclusory statement falls short of establishing a reasonable probability that he would not have pled guilty and would have insisted on going to trial. This is especially true in reviewing the entire record. The evidence in the case consisted of detailed allegations by the victim and corroboration by a friend of the victim who heard Phoenix apologize to the victim immediately after the abuse. Although Phoenix makes much of the fact that he provided a formal statement to the police during an interview after being Mirandized, he fails to acknowledge that he did not confess to the crimes with which he was charged during that interview. Phoenix has failed to establish that suppression of the "nonconfession" and the other two statements—one in which he stated he knew why he was being arrested and the other a telephone call from the jail in which the topic discussed is unknown—would have triggered a reasonable probability that he would not have pled guilty and would have insisted on going to trial. It is an appellant's burden to designate a record affirmatively showing prejudice. *State v. Kettler*, 299 Kan. 448, 465, 325 P.3d 1075 (2014). Phoenix has failed to do so here.

In sum, Phoenix has failed to establish that the merits of his claims of ineffective assistance of counsel raise a substantial issue deserving of the court's consideration, which is an issue we consider in determining manifest injustice under the second *Vontress* factor. We already have determined that Phoenix failed to provide a reason for his late filing or to make a claim of actual innocence, which are issues we consider in determining manifest injustice under the first and third *Vontress* factors. Considering the

10

totality of the circumstances related to each of the three *Vontress* factors, we find Phoenix has failed to establish that manifest injustice warrants an extension of time to file his habeas corpus petition.

Affirmed.