# United States Court of Appeals
## For the First Circuit

—————————————

No. 20-1650

CHRISTOPHER FRENCH,

Plaintiff, Appellant,

v.

DANIEL MERRILL, individually and in his official capacity as a Sergeant in the Police Department of the Town of Orono; JOSH EWING, individually and in his official capacity as Chief of Police of the Town of Orono; TOWN OF ORONO; TRAVIS MORSE, individually and in his official capacity; CHRISTOPHER GRAY, individually and in his official capacity; NATHAN DROST, individually and in his official capacity,

Defendants, Appellees.

—————————————

Before
Howard, Chief Judge,
Lynch, Lipez, Thompson, Kayatta, Barron, and Gelpí, Circuit Judges.

—————————————

**ORDER OF COURT**
Entered: January 28, 2022

Pursuant to First Circuit Internal Operating Procedure X(C), the petition for rehearing en banc has also been treated as a petition for rehearing before the original panel. The petition for rehearing having been denied by the panel of judges who decided the case, and the petition for rehearing en banc having been submitted to the active judges of this court and a majority of the judges not having voted that the case be heard en banc, it is ordered that the petition for rehearing and petition for rehearing en banc be denied.

**LIPEZ**, **THOMPSON, KAYATTA, and BARRON**, **Circuit Judges**. In response to the dissents from the denial of en banc review, we make the following points:

1. Contrary to the depiction of the facts that our dissenting colleagues promote and rely upon, this case does not involve an imminent risk of physical harm to an intimate partner. As the majority opinion explains in detail, the woman who summoned the police was at her own home, at a different location, when the events at issue transpired. See French v. Merrill, 15 F.4th 116, 122 (1st Cir. 2021). Hence, there is simply no equivalence between what occurred in this case and the facts of the two recent Supreme Court cases cited by the joint dissent, in which law enforcement officers were entitled to qualified immunity for "actions taken while dealing with situations of

intimate partner violence."  Dissent of JJ. Lynch and Howard (citing City of Tahlequah v. Bond, 142 S. Ct. 9 (2021) (per curiam); Rivas-Villegas v. Cortesluna, 142 S. Ct. 4 (2021) (per curiam)).

We are mindful of the troubling relationship and threatening behavior that provides the backdrop for this case.  But, in the proceedings below and on appeal, there was never a claim by the officers that they confronted circumstances requiring split-second decision-making.  The depiction of an episode of imminent, physical, intimate partner violence has been and continues to be a construct of the joint dissent.  Indeed, at one point, an officer proposed returning to the police station so that he could apply for a warrant.  See French, 15 F.4th at 129.  The officers chose not to take that step, and neither the defendants nor the record suggest that their choice was based on the risk of any harm that could occur in the interim.

2.  The joint dissent also presents an inaccurate and minimized description of the officers' intrusions onto the curtilage of the plaintiff's home.  What happened here was not simply a knock on the front door, followed by a knock on a window, and then a second knock on the front door.  Rather, after the officers' initial, lawful knock-and-talk attempt -- to which they received no reply -- one or more officers re-entered the curtilage repeatedly, within a short span of time, while increasing the invasiveness of their efforts to obtain an invitation to stay and talk.  The front door finally opened only after officers, during their fourth entry onto the property, knocked simultaneously at that door and on the plaintiff's bedroom window, while also yelling at their target to come out and shining a light into his bedroom.  See id. at 129-30.  The officers' conduct was so far outside the scope of the "knock-and-talk" exception to the warrant requirement that no reasonable officer could have thought it was permissible.

3.  In an apparent attempt to marginalize the Supreme Court's straightforward articulation of the knock-and-talk exception, our dissenting colleagues suggest that the court only "briefly discussed" that exception in Florida v. Jardines, 569 U.S. 1 (2013).  This suggestion is simply unrelated to reality.  Jardines was all about the nature and scope of the implied license to enter the curtilage of a private residence without a warrant.  Id. at 8-9.  In his opinion for the Court, Justice Scalia stated in specific behavioral terms the nature of the implied social license justifying that exception: "This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave."  Id. at 8.  This formulation is central to the reasoning in Jardines.  The outcome of the case is inexplicable without it.

As recounted above, the typical scenario described by Justice Scalia is plainly not what happened here.  The joint dissent seems to take the view that the dramatic departure by the officers from the conduct a homeowner would anticipate from a visitor was justified by the so-called emergency that the officers faced.  Beyond the lack of factual support, we question the legal premise of that view -- namely, that an emergency can change the scope of the knock-and-talk exception.  To the extent there is an emergency, a different exception to the warrant requirement -- one based on the presence of exigent circumstances -- would come into play.  The knock-and-talk exception is simply inapt when officers are faced with an emergency for which quick action is needed.  As Justice Scalia's formulation makes clear, the knock-and-talk exception applies when we can equate the entry of law enforcement officers onto private property with the entry of any member of the public onto the property.  See id. ("[A] police officer not armed with

a warrant may approach a home and knock, precisely because that is 'no more than any private citizen might do.'" (quoting <u>Kentucky</u> v. <u>King</u>, 563 U.S. 452, 469 (2011)). If exigent circumstances justifying police intervention exist, we are no longer in the realm of the knock-and-talk exception.

4. <u>Jardines</u> did not involve typical knock-and-talk circumstances because the officers conducted a search with a dog instead of knocking to elicit an "invitation to linger longer" and talk. <u>Id.</u> at 8-9. Accordingly, the Court held, the officers exceeded the implied social license to enter private property. <u>Id.</u> at 10. Here, by contrast, the officers began by doing only what the exception typically allows. But they, too, subsequently took atypical actions that any reasonable officer would have recognized as beyond the scope of the social license that Justice Scalia clearly described. Importantly, as Justice Scalia noted, the judgment to be made in these circumstances does not turn on "fine-grained legal knowledge." <u>Id.</u> at 8. Rather, it turns on the ordinary knowledge possessed by most everyone (including "Girl Scouts and trick-or-treaters") about the types of conduct that homeowners implicitly allow within their curtilage. <u>Id.</u> Indeed, most neighbors who viewed a group of strangers acting as these officers did would have been concerned -- and perhaps called the police -- because this was not the type of conduct that private citizens are implicitly invited to undertake at someone else's home.

In other words, what happened here was just as impermissible under the guise of the knock-and-talk exception as was the search by the drug-sniffing dog in <u>Jardines</u>. And the analysis in <u>Jardines</u> made that unlawfulness apparent to any reasonable officer.

We do not disagree with our dissenting colleagues' observation that the doctrine of qualified immunity "recognizes that it is difficult for officials to anticipate how relevant legal doctrines will apply in various situations absent specific guidance from courts." But this case simply does not give rise to the questions concerning the knock-and-talk exception posited by our colleagues: "whether knocking multiple times might be acceptable, whether knocking at a window instead of a door in a multi-tenant apartment is permissible, or how much time must pass between unsuccessful knock and talks before attempting again." A reasonable officer might well be uncertain about the propriety of these or similar scenarios. Here, however, the officers engaged in conduct that blatantly transgressed the limited social license clearly delineated by Justice Scalia. <u>Jardines</u> thus leaves no uncertainty about the unlawfulness of their conduct.

5. It is important to recognize the competing interests at stake. To be sure, we must be mindful of the difficulties faced by police officers in performing their duties and the need to protect them from liability for judgments that are reasonable, even if mistaken. We fully agree with the joint dissent about the importance of freeing officers to make such judgments in the context of imminent threats of intimate partner violence when such circumstances are present. But we cannot forget the important constitutional protection that the warrant requirement affords to individuals in their homes -- the location that is "first among equals" in the realm protected by the Fourth Amendment. <u>Jardines</u>, 569 U.S. at 6. The knock-and-talk <u>exception</u> is a carefully circumscribed, clearly articulated departure from the warrant requirement. Here, no reasonable officer could have mistakenly believed that the repeated, escalating intrusions at French's home were permitted by the knock-and-talk exception.

In sum, the majority's decision adheres to the Supreme Court's precedent on both qualified immunity and the knock-and-talk exception to the warrant requirement. No further review is warranted.

**LYNCH**, **Circuit Judge and HOWARD, Chief Judge, dissenting from the denial of rehearing en banc**. We dissent from the denial of en banc review by our colleagues in the majority. The denial of further review by the full en banc court compounds the error of the panel majority opinion's refusal to adhere to binding precedent from the Supreme Court, this court, and other circuits. The panel majority opinion creates a departure from Supreme Court law, and thus this case is worthy of Supreme Court review. Fuller discussion of these issues can be found in Judge Lynch's dissent from the panel majority opinion. French v. Merrill, 15 F.4th 116, 136 (1st Cir. 2021) (Lynch, J., dissenting in part).

The panel decision and the denial of en banc review frustrate the very purposes for which qualified immunity was created. Qualified immunity serves the important purpose of freeing government officials to act without fear of liability when they make reasonable decisions in the course of their duties. See Mullenix v. Luna, 577 U.S. 7, 11-12 (2015) (per curiam). This doctrine recognizes that it is difficult for officials to anticipate how relevant legal doctrines will apply in various situations absent specific guidance from courts. See id. at 12. While government officials must conform their conduct to the Constitution, the law of qualified immunity prohibits the imposition of penalties on them for their reasonable conduct, especially when there is no clear guidance from the courts as to the contours of the constitutional right at issue.

Nothing in Florida v. Jardines, 569 U.S. 1 (2013) put the officers in this case on notice that their actions were in violation of any clearly established rule. Here, a female victim who had just ended an intimate partner relationship with the perpetrator reported the following to the police. She reported to defendants that her former boyfriend had angrily confronted her on a public street, climbing onto the hood of her car, and then when she got home, he twice broke into her house as she and her roommates slept. During the first break-in he had stolen her phone, and she was frightened by him, his conduct, and what he would do when he read the messages on her phone. The officers immediately went to where he lived, in a multi-tenant house, to knock and talk, as they plainly had the right to do. When no one answered the officers knocking on the front door, the officers then went a few feet into the curtilage to knock on the bedroom window of the room they believed was the perpetrator's room. They then returned to the door and knocked again. Another occupant answered the door, and that occupant went to get the perpetrator. He voluntarily came to the door and was questioned by the defendants, and his answers led to his arrest.

In Jardines, the Supreme Court held that police use of a drug-sniffing dog to inspect the curtilage of a person's home constitutes a search under the Fourth Amendment. 569 U.S. at 11-12. The Court briefly discussed the knock and talk exception to the warrant requirement, noting that it is coextensive with the implied license for visitors "typically" to "approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." Id. at 8. This discussion of the "typical[]" knock and talk does not set forth with any kind of specificity the parameters of a permissible knock and talk. It provides a framework for how to consider what might or might not be allowed under the knock and talk exception, but it provides no settled answer to questions such as whether knocking multiple times might be acceptable, whether knocking at a window instead of a door in a multi-tenant apartment is permissible, or how

- 4 -

much time must pass between unsuccessful knock and talks before attempting again. Reasonable police officers (and judges) could read Jardines and disagree about the answers to these questions. The constitutionality of these questions is therefore hardly "beyond debate," as the Supreme Court has instructed that they must be. See Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).

Further, the panel majority violates two other rules about qualified immunity: that the qualified immunity inquiry must be focused on the specific context of the case and that it must focus on what the officers knew at the time. The qualified immunity inquiry must "focus . . . on whether the officer had fair notice that her conduct was unlawful," and "must be undertaken in light of the specific context of the case." Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (second quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). In light of the context, "qualified immunity turns on assessing the situation from the point of view of an objectively reasonable officer." LaFrenier v. Kinirey, 550 F.3d 166, 168 n.2 (1st Cir. 2008). Not only did the officers in this case lack notice of the purported unconstitutionality of their knock and talk, but the context of the case and the information known to the officers render their actions more, not less, reasonable. The victim, who the officers knew had complained to the police about the perpetrator in the past as recounted above, reached out to them two separate times in the same night, saying that her former boyfriend had twice broken into her home and that she was frightened. The officers appropriately took seriously her report of the threats to her safety and the risk that the perpetrator would destroy the cell phone. They reasonably decided to attempt to knock and talk with the suspect by knocking on his door, and then his window. It was reasonable for them to do what they did, and nothing in the Constitution required them to abandon their efforts to knock and talk and to delay and prepare a warrant application and seek a warrant from a judge in a different town, a lengthy process.

Within the last few months, the Supreme Court has twice reaffirmed the importance of the principle that clearly established law for qualified immunity purposes must be defined with specificity. See City of Tahlequah v. Bond, 142 S. Ct. 9, 11 (2021) (per curiam) ("We have repeatedly told courts not to define clearly established law at too high a level of generality."); Rivas-Villegas v. Cortesluna, 142 S. Ct. 4, 8 (2021) (per curiam) ("[T]o show a violation of clearly established law, [the plaintiff] must identify a case that put [the defendant] on notice that his specific conduct was unlawful."). In both of these cases, the Supreme Court unanimously reversed denials of qualified immunity to law enforcement regarding actions taken while dealing with situations of intimate partner violence. See Bond, 142 S. Ct. at 10-11; Cortesluna, 142 S. Ct. at 6-7. These recent Supreme Court decisions send an unmistakable signal that the proper course of action in this case would have been to affirm the district court's grant of qualified immunity.

For many years, police departments gave threats of this sort a low priority or ignored them altogether. See Town of Castle Rock v. Gonzalez, 545 U.S. 748, 779-81 (2005) (Stevens, J., dissenting); see also Soto v. Flores, 103 F.3d 1056 (1st Cir. 1997). Though many states have taken steps to combat this "crisis of underenforcement," Castle Rock, 545 U.S. at 780, there are "miles to go before [we] sleep." Robert Frost, Stopping by Woods on a Snowy Evening (1923). Under the majority's decision, these police officers, who should be commended for taking the victim's concerns seriously and acting promptly, are now being penalized for a reasonable decision made in the course of the investigation. This decision will disincentivize police from taking decisive action in such cases for fear of liability -- precisely what qualified immunity was created to avoid. See Anderson v. Creighton, 483 U.S. 635, 638 (1987) (noting that qualified

- 5 -

immunity alleviates the "risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties").

For the foregoing reasons, we dissent and urge further review.

**GELPÍ**, **Circuit Judge**, **dissenting from the denial of rehearing en banc**. I respectfully dissent from the denial of en banc review by the Court. This case raises a question of exceptional importance regarding the Fourth Amendment and the doctrine of qualified immunity. See Fed. R. App. P. 35(a)(2). Ultimately, the Court's opinion will impact how police officers in all five First Circuit jurisdictions respond to critical and time-sensitive situations such as that involving the female victim and her former partner here. As such, I believe this case is suited for review by the full Court.

By the Court:

Maria R. Hamilton, Clerk

cc:  Hon. John C. Nivison, Christa Berry, Clerk, United States District Court for the District of Maine, Timothy C. Woodcock, Edward R. Benjamin Jr., Kasia Soon Park